## MILLER *v.* BRASS COMPANY.

1. In reissued letters-patent No. 6844, granted, Jan. 11, 1876, to Joshua E. Ambrose, assignor by mesne conveyances to Edward Miller & Co., for an improvement in lamps, the second claim is void, it not being for the invention described and claimed in the original application.

2. Where a specific device or combination is claimed, the non-claim of other devices or combinations apparent on the face of the specification is, in law, so far as the patentee is concerned, a dedication of them to the public, and will so be enforced, unless he with all due diligence surrenders his patent for reissue, and proves that his omission to claim them arose wholly from inadvertence, accident, or mistake.

3. Such lapse of time as indicates his want of due diligence is fatal, and the reissue, if granted, will be void.

4. The court condemns the practice of reissuing letters-patent with broader claims than those covered by the original letters.

APPEAL from the Circuit Court of the United States for the District of Connecticut.

The facts are stated in the opinion of the court.

*Mr. John S. Beach* for the appellants.
*Mr. C. R. Ingersoll, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is a suit brought by Edward Miller & Co. against The Bridgeport Brass Company to restrain the infringement of a patent, and for an account of profits, &c. The patent was for an alleged improvement in lamps, and was originally granted to Joshua E. Ambrose, Oct. 16, 1860, for fourteen years, and was extended for seven years longer. It was twice surrendered and reissued, once in May, 1873, and again in January, 1876. The court below dismissed the bill on the ground that the second reissue, No. 6844, on which the suit was brought, was not for the same invention which was described and claimed in the original patent. We agree with the Circuit Court in the conclusion to which it came. The original patent described a combination of devices, amongst other things, two domes or reflectors, one above the other, elevated above a perforated cap through which a wick tube and a vapor tube ascended. It was claimed that this combination of devices,

especially including the two domes, which admitted the external air between them for producing a more perfect combustion, would make a lamp which, without a chimney and without danger of explosion, would burn those hydro-carbons which are volatile and contain an excess of carbon.   The invention proved a failure, but it was found that the use of one of the domes (and the other parts), with the restoration of the chimney, would be a real improvement, and both the complainant and the defendant made such lamps in large quantities.   Fifteen years after the original patent was granted, the patentee (or rather his assignee) discovers that the improved lamp was really a part of his original invention, and that by inadvertence and mistake he had omitted to claim it.   We think, however, that the court below was clearly right in holding that the invention specified in the second claim of the reissued patent (which is the one in question here) is not the same invention which was described and claimed in the original patent.   The latter was for a double dome without a chimney, the peculiarity of the supposed invention being the use of the double dome as a means of dispensing with the chimney.   The reissue is for a single dome with a chimney.   It is not only obviously a different thing, but it is the very thing which the patentee professed to avoid and dispense with.

But there is another grave objection to the validity of the reissued patent in this case.   It is manifest on the face of the patent, when compared with the original, that the suggestion of inadvertence and mistake in the specification was a mere pretence; or if not a pretence, the mistake was so obvious as to be instantly discernible on opening the letters-patent, and the right to have it corrected was abandoned and lost by unreasonable delay.   The only mistake suggested is, that the claim was not as broad as it might have been.   This mistake, if it was a mistake, was apparent upon the first inspection of the patent, and if any correction was desired, it should have been applied for immediately.

These afterthoughts, developed by the subsequent course of improvement, and intended, by an expansion of claims, to sweep into one net all the appliances necessary to monopolize a profitable manufacture, are obnoxious to grave animadver-

sion. The pretence in this case that there was an inadvertence and oversight which had escaped the notice of the patentee for fifteen years is too bald for human credence. He simply appealed from the judgment of the office in 1860 to its judgment in 1876; from the commissioner and examiners of that date, to the commissioner and examiners of this: and upon a matter that was obvious on the first inspection of the patent. If a patentee who has no corrections to suggest in his specification except to make his claim broader and more comprehensive, uses due diligence in returning to the Patent Office, and says "I omitted this," or "my solicitor did not understand that," his application may be entertained, and, on a proper showing, correction may be made. But it must be remembered that the claim of a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed. It is a declaration that that which is not claimed is either not the patentee's invention, or, if his, he dedicates it to the public. This legal effect of the patent cannot be revoked unless the patentee surrenders it and proves that the specification was framed by real inadvertence, accident, or mistake, without any fraudulent or deceptive intention on his part; and this should be done with all due diligence and speed. Any unnecessary laches or delay in a matter thus apparent on the record affects the right to alter or reissue the patent for such cause. If two years' public enjoyment of an invention with the consent and allowance of the inventor is evidence of abandonment, and a bar to an application for a patent, a public disclaimer in the patent itself should be construed equally favorable to the public. Nothing but a clear mistake, or inadvertence, and a speedy application for its correction, is admissible when it is sought merely to enlarge the claim.

The power given by the law to issue a new patent upon the surrender of the original, for the correction of errors and mistakes, has been greatly misunderstood and abused. It was first contained in the act of July 3, 1832, c. 357, and the law was adopted in view of suggestions made in several judgments of this court. But it was carefully confined to cases where the patent was invalid or inoperative by reason of a failure to com-

ply with any of the terms and conditions prescribed by the law for giving a clear and exact description of the invention, and where such failure was due to inadvertence, accident, or mistake, without any fraudulent or deceptive intention. This being shown, a new patent, with a correct specification, was authorized to be issued for the same invention. The act of July 4, 1836, c. 45, enlarged the power to grant reissues by adding an additional ground for reissue; namely, that the patentee had inadvertently claimed in his specification, as his own invention, more than he had a right to claim as new. And, with that addition, the law has continued substantially the same to the present time. The fifty-third section of the act of 1870, c. 230, which was the law on this subject when the reissue in the present case was granted, is in the following words: " Whenever any patent is inoperative or invalid by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent, and the payment of the duty required by law, cause a new patent for the same invention, and in accordance with the corrected specification, to be issued to the patentee." It will be observed that whilst the law authorizes a reissue when the patentee has claimed too much, so as to enable him to contract his claim, it does not, in terms, authorize a reissue to enable him to expand his claim. The great object of the law of reissues seems to have been to enable a patentee to make the description of his invention more clear, plain, and specific, so as to comply with the requirements of the law in that behalf, which were very comprehensive and exacting. The third section of the act of 1793, c. 11, required an applicant for a patent " to deliver a written description of his invention, and of the manner of using, or process of compounding the same, in such full, clear, and exact terms as to distinguish the same from all other things before known, and to enable any person skilled in the art or science of which it is a branch, or with which it is most nearly connected, to make, compound, and use the same. And in the case of any machine, he shall fully explain the

principle, and the several modes in which he has contemplated the application of that principle or character, by which it may be distinguished from other inventions; and he shall accompany the whole with drawings and written references, where the nature of the case admits of drawings." This careful and elaborate requirement was substantially repeated in the sixth section of the act of 1836, with this addition: "And shall particularly specify and point out the part, improvement, or combination which he claims as his own invention or discovery." Although it had been customary to append a claim to most specifications, this was the first statutory requirement on the subject. It was introduced into the law several years subsequently to the creation of reissues; and it was in the thirteenth section of this act of 1836 that provision was made for a reissue to correct a claim which was too broad in the original. Now, in view of the fact that a reissue was authorized for the correction of mistakes in the specification before a formal claim was required to be made, and of the further fact that when such formal claim was required express power was given to grant a reissue for the purpose of making a claim more narrow than it was in the original, without any mention of a reissue for the purpose of making a claim broader than it was in the original, it is natural to conclude that the reissue of a patent for the latter purpose was not in the mind of Congress when it passed the laws in question. It was probably supposed that the patentee would never err in claiming too little. Those who have any experience in business at the Patent Office know the fact, that the constant struggle between the office and applicants for patents has reference to the claim. The patentee seeks the broadest claim he can get. The office, in behalf of the public, is obliged to resist this constant pressure. At all events, we think it clear that it was not the special purpose of the legislation on this subject to authorize the surrend of patents for the purpose of reissuing them with broader and more comprehensive claims, although, under the general terms of the law, such a reissue may be made where it clearly appears that an actual mistake has inadvertently been made. But by a curious misapplication of the law it has come to be principally resorted to for the pur-

pose of enlarging and expanding patent claims. And the evils which have grown from the practice have assumed large proportions. Patents have been so expanded and idealized, years after their first issue, that hundreds and thousands of mechanics and manufactures, who had just reason to suppose that the field of action was open, have been obliged to discontinue their employments, or to pay an enormous tax for continuing them.

Now whilst, as before stated, we do not deny that a claim may be enlarged in a reissued patent, we are of opinion that this can only be done when an actual mistake has occurred; not from a mere error of judgment (for that may be rectified by appeal), but a real *bona fide* mistake, inadvertently committed; such as a Court of Chancery, in cases within its ordinary jurisdiction, would correct. Reissues for the enlargement of claims should be the exception and not the rule. And when, if a claim is too narrow, — that is, if it does not contain all that the patentee is entitled to, — the defect is apparent on the face of the patent, and can be discovered as soon as that document is taken out of its envelope and opened, there can be no valid excuse for delay in asking to have it corrected. Every independent inventor, every mechanic, every citizen, is affected by such delay, and by the issue of a new patent with a broader and more comprehensive claim. The granting of a reissue for such a purpose, after an unreasonable delay, is clearly an abuse of the power to grant reissues, and may justly be declared illegal and void. It will not do for the patentee to wait until other inventors have produced new forms of improvement, and then, with the new light thus acquired, under pretence of inadvertence and mistake, apply for such an enlargement of his claim as to make it embrace these new forms. Such a process of expansion carried on indefinitely, without regard to lapse of time, would operate most unjustly against the public, and is totally unauthorized by the law. In such a case, even he who has rights, and sleeps upon them, justly loses them.

The correction of a patent by means of a reissue, where it is invalid or inoperative for want of a full and clear description of the invention, cannot be attended with such injurious results as follow from the enlargement of the claim. And hence a

reissue may be proper in such cases, though a longer period has elapsed since the issue of the original patent. But in reference to reissues made for the purpose of enlarging the scope of the patent, the rule of laches should be strictly applied; and no one should be relieved who has slept upon his rights, and has thus led the public to rely on the implied disclaimer involved in the terms of the original patent. And when this is a matter apparent on the face of the instrument, upon a mere comparison of the original patent with the reissue, it is competent for the courts to decide whether the delay was unreasonable, and whether the reissue was therefor contrary to law and void.

We think that the delay in this case was altogether unreasonable, and that the patent could not lawfully be reissued for the purpose of enlarging the claim and extending the scope of the patent.

*Decree affirmed.*