NEWTON *v.* FURST & BRADLEY MANUF'G Co. and others.*

*(Circuit Court, N. D. Illinois.   November 29, 1882.)*

**1. PATENTS FOR INVENTIONS—REISSUE—EXPANSION OF CLAIM.**

Where the claim of the original patent did not cover the device used by the defendant, and a reissue was necessary to expand or explain the patent in order to cover defendant's plow, such reissue is void.

**2. SAME—WHAT MUST BE SHOWN.**

It is incumbent on the owner of a patent, when a reissue is taken long after the date of the original, to show that there was some mistake or inadvertence in the original issue, which made a reissue necessary to cover all the patentee had nvented.

*Coburn & Thatcher*, for complainant.

*West & Bond*, for defendant.

BLODGETT, D. J.   This is a bill to enjoin an alleged infringement of a patent originally issued on the ninth of October, 1866, to F. S. Davenport, for an improvement in "gang plows," and reissued December 2, 1879, to the complainant, as assignee of Davenport.   The original patent, as shown, covered nearly all the elements which enter into the organization of a "gang plow," and contained eight claims, covering the several specific devices which were combined to form the complete mechanism.   One of the features of the original patent was a brake arranged to act upon one of the ground or carrying wheels, by means of which the forward ends of the plow-beams were raised, so that the plows, when in motion, would be lifted or thrown out of the ground by the power of the team; and this feature was specifically covered by the first claim.   The reissue contains only three claims, all intended to cover the brake, or, as it is called in the reissue, "the clutch mechanism," by which the plows are lifted from the ground.   The defenses set up by the defendant are—*First,* that they do not infringe the complainant's patent; *second,* that the reissued patent is void, for the reason that it is for a different invention than that described in the original, and has been unwarrantably expanded from the original.

It appears from the proof that after the issue of the original patent a few plows were made embodying the general features of the patent as a whole, but after a short experiment in offering this plow to the public, the owner of the patent, and those operating under it, introduced material changes in the general structure of the machine, and only retained so much of the original device as embraced the mode of lift-

*Affirmed.   See 7 Sup. Ct. Rep. 369.

ing the forward ends of the plow-beams from the ground by means of the brake applied to the periphery of the wheel. In 1874 the defendant company took a license from Mr. Newton, who was then the owner of the Davenport patent, and up to 1879 continued to make and sell "wheel plows" containing the Davenport brake attachment for lifting them out of the ground. As early as 1876 the defendant, in order to meet competition from other manufacturers, began the manufacture of the "wheeled iron" or "sulky plow," which is now, charged to be an infringement of complainant's patent, but continued to make plows with the Davenport brake attachment until the fall of 1879, and to pay royalties to complainant therefor under the terms of its license. In the fall of 1879 the complainant insisted that the defendant's new iron plow infringed the Davenport patent, and demanded royalties thereon under the license, which the defendant refused to pay. The complainant then obtained this reissue of the Davenport patent, and this suit is brought to determine whether the new iron plow of the defendant infringes the Davenport patent as it now stands reissued.

The complainant's patent shows a plank or board 10 or 12 inches wide, to each end of which spindles are attached for the ground or carrying wheels to run on,—this is called in the specifications "the hinged board, G,"—and to it the forward ends of the plow-beams are attached by joints, so that when this board-axle or hinged board lies flat or horizontal, the plows are fastened to the rear or back edge of this board or broad axle; and when the axle is turned up on edge, or vertically, the ends of the plow-beams are lifted to a height equal to the width of the board or axle from its center. The brake mechanism is so arranged that when the brake is made to engage with one of the carrying wheels in motion, this axle is turned up edgewise, and the plows thereby lifted out of the ground.

The first claim of the original patent was in these words: "I claim as new, and desire to secure by letters patent, (1) the lever, $p$, rod, $q$, and brake, $r$, arranged and operating as and for the purposes described."

The claims in the reissue are as follows:

"(1) In a wheel plow the combination with a swinging axle and ground or carrying wheel of a friction clutch mechanism, and means to engage and disengage the latter with the ground or carrying wheels, said parts being constructed and adapted to raise the plow by locking the swing axle to the carrying wheel by friction clutch engagement, and raise the plow-beam by the draft or power of the team, substantially as set forth. (2) In a wheel plow

the combination with a ground wheel and swing axle, and a plow-beam connected to the latter, of clutch mechanism connected to the axle, and adapted by engagement with the wheel to utilize the draft of the team in turning the swing axle in an upright position, and thereby raise the plow-beams, substantially as set forth. (3) In a wheel plow, the combination with a ground wheel and swing axle and a plow-beam, connected to the latter, of a friction clutch, connected to the axle, and adapted by contact with the wheel to turn the axle into an upright position, and thereby raise the plow-beam by aid of the draft of the team, substantially as set forth."

The defendant's machine is a wheel or sulky plow, with a bent or cranked iron axle, upon which the plow-beams are pivoted at about two-thirds of the distance from the forward end to the coulter; so that the plow is nearly balanced upon the axle or crank, and the arrangement of the mechanism is such that when the plow is running or operating in the ground, the crank part is in a horizontal position, and when it is desired to raise the plows out of the ground, the crank is turned upwards towards a vertical position, whereby the forward ends of the beams are raised until the point of the plow runs out of the ground. After the forward end of the beam has risen to a certain point it strikes a stop, so that when the crank has assumed a vertical position the plow is balanced across the crank part of the axle, thus sustaining the plow at the height above the ground of the crank when in a vertical position. This turning of the crank axle so as to lift the plow is accomplished by a friction band, or brake, which is made to engage with an inner extension of the hub of one of the carrying wheels, so that as the wheel moves forward it causes the crank axle to turn upwards from a horizontal to a vertical position.

Is this friction band, encircling the extension of the hub of the carrying wheel in the defendant's plow, an infringement of the Davenport patent? Both these devices utilize the power of the team which draws the plow to raise the plow out of the ground. The purpose of each is substantially the same. The Davenport device applies the brake to the periphery of the carrying wheel. The defendant applies a friction band to the hub of the wheel. It must be conceded that these devices, in their mode of operation and effect, are very much alike; and if the state of the art was such, when Davenport entered the field, as to entitle him to a broad claim for any device by which the plow is lifted from the ground by the power of the team through a brake or clutch mechanism, I should have little hesitation in holding that the defendant's machine infringes that of the complainant.

It therefore becomes necessary to examine, in the light of the evidence in this case, the state of the art at the time Davenport made his invention.

The proof shows that in April, 1858, G. F. Anderson, of New Hampshire, obtained a United States patent for a seed-drill, or corn-planter, which, in addition to the apparatus for dropping, carried plowshares for the purpose of covering the seed. This is a wheel machine, and shows an axle with cams or eccentrics, and a clutch mechanism, whereby the axle is to be connected with one of the carrying wheels, so that the axle will rotate with the wheel, and the eccentric thereby raise the plow and seed-tubes off the ground to the extent of one-fourth a revolution of the cams. This cammed axle, or axle with eccentrics affixed to it, operates for the purpose of raising the plows out of the ground precisely like a crank axle, and the plows are raised by the draft or power of the team. It is also noticeable that this Anderson clutch mechanism is arranged to engage with the end of the hub of one of the wheels, therein closely resembling the device of the defendant in most respects, except that it is not a "friction clutch."

The United States patent of H. H. Baker, issued in December, 1860, for a "wheel plow," shows a clutch mechanism made to engage with a pin in the rim of one of the carrying wheels, whereby the plows were raised and caused to run out of the ground. This machine shows no crank axle, but it shows a rock shaft, extending transversely across the frame, which, for the purposes of the function of raising the plows from the ground, takes the place of the cammed axle of Anderson, or the hinged board, G, of Davenport. After describing his device in his specifications, Baker makes a specific claim for "raising the plows 1 and 2 vertically at will, by the motion of the bearing wheel through the aid of mechanism substantially as set forth." Here we have an inventor who not only shows a clutch mechanism arranged to engage with the bearing wheel and thereby raise the plows from the ground by the motion of the wheel, but he claims that as his particular invention.

The United States patent of H. R. Huie, issued in August, 1863, for a "wheel plow," shows a crank axle in combination with a plow-beam for the purpose of raising the plow from the ground, but he uses no brake mechanism, and does not utilize the power of the team to lift the plows.

I also find that a clutch mechanism arranged to engage with one or both of the carrying wheels was a common device for raising the

teeth of a horse hay-rake from the ground long before the Davenport invention.   And in the United States patent to G. H. Daily and Robert M. Treat, issued in November, 1862, a crank axle is shown with brakes arranged to engage with the periphery of the wheel for the purpose of raising the rake teeth.   This friction clutch or brake operated directly in combination with a crank or swing axle, and is so similar to the Davenport device for raising his plows that you have only to substitute a plow in place of a rake tooth and you have almost an exact reproduction of Davenport's mechanism for raising the forward end of his plow-beams.

I might, if I deemed it necessary to do so, refer to other proof in the case, but think it is already apparent that, at the date of Mr. Davenport's patent, older inventors had shown devices in wheel plows for utilizing the motion of the carrying wheel to raise the plow from the ground, to such an extent, and so nearly embodying the same instrumentalities adopted by Davenport, as to limit his claims as an inventor to his specific devices.   It is true that some of the machines to which I have referred were not organized as plows, but their uses are so analogous to that of plows, and with a knowledge of these machines which Davenport must be presumed to have had, it was so easy to adapt these old corn-planter and horse-rake devices to a plow mechanism, that I deem them pertinent upon the question of the state of the art.

After a careful study of the mechanisms of complainant and defendant, I find that the brake, $r$, of the Davenport patent, which was arranged to engage with the rim or periphery of the bearing wheel for the purpose of raising the plows, is not identical with the friction band of the defendant's plow, which is arranged to engage with the extended hub of one of the carrying wheels; for although the result of the operation of each is the same, I do not think defendant's friction band can be said to be the same "means for engaging or disengaging the axle and carrying wheel," so as to raise the plow or plows, as Davenport's brake, $r$.

It will be borne in mind that, in the original patent, this device for raising the plows is claimed simply as "lever, $p$, rod, $q$, and brake, $r$, arranged and operating," etc, while in the reissue the claims are broadly for combinations of a swing axle, plow-beam, carrying wheel, and friction clutch mechanism, adapted to raise the plow by locking the axle to the carrying wheel.   This cannot be construed to include any and all swing axles, and any and all friction clutches, and any and all plow-beams and carrying wheels; but it must be such a swing axle,

friction clutch, carrying wheel, and plow-beam as are shown in the complainant's device. Referring then to the complainant's patent, we see that he does not describe a swing axle at all, but describes a hinged board, G, and although this may have many of the characteristics of a swing or crank axle, it was something more than that in the complainant's organization.

So the complainant's friction clutch can only operate to raise the plows when the team is moving forward, while the defendant's friction band is so arranged, in connection with the hub extension, that defendant's plow can be lifted from the ground when at rest. I am therefore of opinion that the defendant's friction band does not infringe the friction clutch shown in the complainant's mechanism, and that the complainant, upon the state of the art, had no right to claim broadly any friction clutch whereby the crank axle should be locked to the wheel, but is confined to the friction clutch shown in his specifications and drawings.

As to the question raised in regard to the validity of the reissue, I do not deem it necessary to say more than that, under the recent decision of the supreme court with regard to reissued patents, the owner of this patent had no right, 13 years after the issue of the original, to expand the claims of the original patent so as to make it cover the combination of the friction brake with the other parts of the machine which were, perhaps, needed to make it operative, but which Davenport, at the time he took his patent, did not deem was any part of his invention. Both the evidence of the state of the art at the time Davenport took his patent, and the history of the uses to which this patent has been applied, all show that Davenport had no broad right to claim the combination of clutch mechanism, and cranked or cammed axles, which are the same, for the purpose of raising the plow out of the ground by the power of the team, for Anderson had done this in his combined seeder and plow, and the analogous device of the horse rake would certainly suggest how this might be done, if not instruct as to the mode of doing it, and this expansion of the complainant's patent was evidently made after the defendant's iron plow had been brought out, and for the purpose of covering the device of raising the plow which is there shown.

Clearly, if the claim of the original patent did not cover the device used by the defendant, and if a reissue was necessary to expand or explain the patent in order to cover the defendant's plow, then such reissue is void in the light of the case of *Miller* v. *Bridgeport Brass Co.* 104 U. S. 350; and *Campbell* v. *James*, 104 U. S. 356. It certainly

seems to me incumbent on the owner of a patent, when a re-issue is taken so long after the date of the original, to show that there was some mistake or inadvertence in the original issue, which made a re-issue necessary to cover all the patentee had invented; but the most that can be said in support of this reissue is that, perhaps, if Davenport had asked for these combination claims when he took his original patent, they might have been allowed at that time, but this does not show that after waiting 13 years, and till others have used the combination, he can now be allowed by a reissue to take all the combination claims which might have been conceded to him at the issue of his original, and thereby prevent others from reaping the benefit of improvements they have made in his mechanism, and which he neglected to claim in apt time to prevent others from using what he had abandoned.

I therefore find—*First,* that defendants do not infringe the complainant's patent as charged; *second,* that the reissue is void by reason of the expansion of the claims beyond those of the original patent.

The bill is therefore dismissed for want of equity.