## SINGER MANUF'G CO. *v.* GOODRICH.

*(Circuit Court, D. Massachusetts.* February 7, 1883.)

1. PATENTS FOR INVENTIONS—REISSUE—ENLARGEMENT OF CLAIM.
    Where the reissue covers only claims which do not appear on the face of the original, it is invalid.
2. SAME—UNREASONABLE DELAY.
    If an alteration and enlargement of the scope of a patent by reissue is in any case allowable, an unexplained delay of more than five years in taking out the reissue is an unreasonable delay.

In Equity.
*Causten Browne,* for plaintiff.
*E. A. West,* for defendant.
Before LOWELL and NELSON, JJ.

NELSON, J. This is a suit for infringement of reissue patent No. 4196, granted to the plaintiff as the assignee of James Bolton, the original inventor, for an improved tuck-marker or creaser for sewing-machines.

If the plaintiff's patent is valid, the defendant's tuck-marker is a plain infringement of it. But we are of opinion that the patent is

invalid under the rule established in *Miller* v. *Bridgeport Brass Co.* 104 U. S. 350.

The original patent, No. 46,871, was granted March 21, 1865; the reissue was granted December 13, 1870, five years and nine months after the date of the original. If any invention claimed or described in the reissue is identical with either of the claims in the original, it is to be protected, under the recent decision of Mr. Justice GRAY in *Gould* v. *Spicer, ante,* 344. But we are of opinion that the reissue covers only claims which do not appear upon the face of the original.

The specification of the original patent states:

"This invention consists in a novel mode of constructing and operating markers or creasers to be used on sewing-machines, being composed of only two pieces hinged together so as to make one instrument, and so attached to a presser-bar having a positive vertical motion as to be operated at every movement of the feeding devices. The drawing represents the marker in position on the table and attached to the presser-bar of a sewing-machine."

After describing further the device, the specification proceeds:

"The arm, *b*, [the upper arm of the marker,] carries an adjustable bracket, *k*, by passing through a vertical slot cut therein, as seen in figure 2, and in which it is free to slide. The bracket, *k*, extends at right angles from the arm, *b*, towards the plate of the presser-bar of a sewing-machine, and it is to be adjustably attached to the inside of the presser-bar by means of an open slot, *s*, in said bracket, fitting over the shank of a screw which takes into a threaded hole made in said presser-bar. The bracket, *k*, can be attached to the presser-bar in many cases by means of the same screw which secures the presser-foot to the bar. The open slot, *s*, in the bracket, *k*, enables me to fix it any desired height on the presser-bar, according to the lateral adjustment of the marker on the bed-plate for the width of tuck. When the bracket, *k*, is fixed to the presser-bar, the arm, *b*, of the marker, being carried in said bracket, reciprocates with the presser-bar; that is, when the marker is used on a sewing-machine which has a reciprocating feed, so-called, the said arm, *b*, moving freely in its pivot, *c*. The material being sewn lies upon and moves over the arm, *f*, [the lower arm of the marker,] and at every advance of the feed the shoe, *d*, of the marker is raised off the material with the rising of the presser-bar, and afterwards borne down by the said bar and pressed upon the material while the needle is making another stich, the material being crimped between the slot, O, in the shoe, *d*, and the raised edge, *n*, of the arm, *f*, thus marking the place for the tuck step by step, as the sewing or the perforation of the material proceeds on a line parallel with the seam or perforations, by means of the rising and falling of the presser-bar."

In describing the manner in which the width of the tuck is determined, the specification says:

"When a narrow tuck is to be made, the position of the joint, $k$, of the arm, $b$, is moved to the right a suitable distance, and the extent of the reciprocating movement of the shoe, $d;$ or, in other words, the extent of its vibration is correspondingly lessened according to the distance of the shoe from the presser-arm. The movement given to the shoe when it is near the presser-bar, as when it is marking for a narrow tuck, is sufficient for successful operation, because the material which is being sewn is held and advanced smoothly beneath the shoe for a considerable distance to one side of the line of sewing, by the joint operation of the feeding devices and the needle. But when the tuck is to be wide, the extent of the vibrating movement of the shoe needs to be greater, because that portion of the material which lies at a considerable distance at one side of the seam has a tendency to drag or lag behind the advance of the seam, unless it is held extended and smooth by the hand of the operator, or by some other means. It is therefore necessary that the shoe be raised sufficiently at each movement of the feed to clear the material. This, it will be seen, is effectually accomplished by my invention; the extent of vibration of the shoe being increased and diminished by the adjustment of the jointed arm, and the consequent lengthening and shortening of the distance between the shoe and the presser-arm."

The specification contains this disclaimer:

"I disclaim marking a tuck or line on material being sewn on a sewing-machine by means of the needle-bar, as shown in the patent granted to H. W. Fuller on the fifth day of June, 1860."

The claims of the original patent are as follows:

"(1) The tuck-marker, A, for use with a sewing-machine, made and operated substantially as above described. (2) I also claim marking parallel lines for tucks, or for the seaming or perforating of material on a sewing-machine by means of a marker, which is operated by a presser-bar having a positive vertical motion, substantially as above described."

In the Fuller patent, the upper arm of the marker derives its motion from and vibrates with the needle-bar, and the invention is stated to consist "in a vibrating marking instrument or instruments that move in unison with the needle, so as to crease or mark the cloth at a given distance or distances from the needle." One of the claims of that patent is "forming one, two, or more creases in cloth by means of markers on opposite sides of the cloth, one of which is connected with the bed of the machine, and the other operates simultaneously with vibrations of the needle in a sewing-machine."

It is thus apparent from the foregoing that a material and essential part of Bolton's original invention consisted in operating the upper arm of the marker in unison with and by means of the movement of the presser-bar of a sewing-machine.

In the reissue the specification contains this statement:

"In order that the two creasing instruments may be intermittently separated and caused to approach each other, the upper one, b, is connected with some reciprocating part of the sewing-machine; and when said machine has a four-motion reciprocating feed, the part that I prefer to make the connection with is the shank, B, of the presser-foot, or the presser-bar, as it is sometimes called. In order that the tuck-marker may be readily adjusted to different positions, notwithstanding its connection with the reciprocating part of the sewing-machine, the connection is made by means of a slotted bracket, k, having a slot, o, of sufficient size to permit the arm, b, of the movable member, d, to slip readily through it."

The reissue contains two claims:

(1) The creasing tuck-marker hereinbefore described, consisting substantially of the spur, the fork, and the stock, all permanently connected, so as to constitute a removable attachment to sewing-machines. (2) The combination of the arm of the movable member of a tuck-marker with a movable bracket, by which the said arm may be connected with a reciprocating member of the sewing-machine, substantially as before set forth.

From a comparison of the specifications and claims of the two patents, it will be seen that the inventor, in the first claim of the reissue, either leaves out the presser-bar movement as an essential part of the improvement, and claims the movable attachment as a separate mechanism, or else, by reference to the specification, claims a tuck-marker moving in unison with, and by means of, any reciprocating part of the sewing-machine, including both presser-bar and needle-bar; while in the second he boldly lays claim to a combination of the movable arm with a movable bracket connected with any reciprocating part of the sewing-machine, whether presser-bar or needle-bar. The operation of the upper arm by the presser-bar movement thus ceases to be a material part of the invention, and the reissue claims and describes a different invention from the original. If such an alteration and enlargement of the scope of a patent by reissue is in any case allowable, an unexplained delay of more than five years in taking out the reissue must be deemed to be unreasonable, under the rule of *Miller* v. *Bridgeport Brass Co. supra;* and as neither of the claims in the reissue is identical with those of the original, the case is not brought within the rule of *Gould* v. *Spicer, supra.*

Bill dismissed, with costs.