SEWING-MACHINE Co. *v.* FRAME.

*(Circuit Court, E. D. Pennsylvania. May 19, 1884.)*

1. PATENTS FOR INVENTIONS—INVENTION—CHANGE IN OLD DEVICE.
   A change in an old device which produces a new and useful result. involves the exercise of invention.
2. SAME—REISSUE—DEFECTIVE DESCRIPTION.
   A patent that is invalid or inoperative for want of a proper description may be corrected by a reissue.
3. SAME—INFRINGEMENT—DIFFERENCE IN STRUCTURE.
   A structural difference in the form and size of an alleged infringing machine will not avoid infringement, when the same work is done in the same manner and by substantially the same means.

In Equity.
Charles Howson and Wayne MacVeagh, for complainant.
Baldwin, Hollingsworth & Fraley, for defendant.
BUTLER, J. The plaintiff, having acquired title to Shorey's patent for cutting and trimming attachment for sewing-machines, issued March 28, 1882, charges the defendant with infringement. The claim of the patent is in the following language: "The combination, substantially as herein described, with stitch-forming mechanism, of a rotary cutter having its cutting edge or edges eccentric." The specifications indicate the state of the art and the result sought by the inventor, and describe the invention reached, so well that we cannot do better than to adopt and insert the language here:

"Cutting or trimming attachments have been applied to some extent to sewing-machines for the purpose of cutting off the edge of the work on a line equidistant from the seam, such attachments being particularly useful in machine-stitching leather. For such attachments a vertically reciprocating cutter has sometimes been used, sometimes a rotary disk-cutter at the end of a horizontal shaft turning in stationary bearings, and sometimes a rotary disk-cutter having intermittent vertical movements, the cutter moving up just before the cloth is fed and remaining up during the feed; it having been found that the cutter was a hinderance to the feed, and not so effective in its cutting operation if in contact with the work during the feed.

"My invention has reference to the employment of a rotary cutter at the end of a horizontal shaft, and to such an arrangement of the mechanism as shall throw the cutting-edge out of action during feeding of the work. I journal my cutter-shaft in stationary bearings, (or bearings that are stationary while the machine is operating,) and I form the cutter with intermittent cutting-edges at one or more breaks in the circular periphery, and I so arrange the parts and so time them in their respective movements that when the feed-bar moves laterally to feed the work a break of the cutter-wheel shall be in juxtaposition to, but not in contact with, the work, so that there shall be no obstacle to the feed and no drag of the work against the rim of the cutter; the cutting or trimming being effected between the feed movements of the feed-bar, or while the work is stationary.

"My invention consists, primarily, in combining with the stitch-forming mechanism a rotary cutter having the cutting part or parts of its periphery eccentric to its axis of rotation."

Aware of the defects in rotary disk-cutters, (which, nevertheless, seemed to have advantages over all others then in use,) Shorey started out to remove it. His object was to construct a machine that would cut the fabric, and not interfere with feeding. Others were laboring in the same direction. Springer had invented a contrivance for raising and depressing the cutter, adding to its rotary motion an intermittent vertical movement. It was not, however, satisfactory. Shorey conceived the idea of accomplishing the desired result without the awkward, disadvantageous vertical movement, by changing the form of the cutter and combining it in such relation to the feeding mechanism that contact with the fabric would be avoided while the latter was moving. How he accomplished this is described by the language quoted, and illustrated by the drawings and model filed. The change made in the old device was simple but effective. It produced a new and useful result. That invention was involved in accomplishing it, is manifest. Other intelligent and skillful mechanics, working towards the same end, failed to discover it.

What does the patent cover? Reading the claim in connection with the specifications, we find it to be for the combination with the stitch-forming mechanism of the ordinary sewing-machine of a rotary cutter, (journaled in stationary or fixed bearing,) not of the exact form or pattern of that described in general terms, but substantially, in effect such; that is to say, a rotary cutter having a break or breaks, or a certain part or parts of its periphery nearer the axis of rotation than the part or parts which does or do the cutting, such breaks or parts nearest the axis being so placed and controlled in operation, as

not to come in contact with the fabric while it is in motion, to the end that the sewing-machine with this attachment may be used for simultaneous sewing and trimming.

Sufficient has been said to indicate our 'udgment (and the reasons for it) that the matter covered by the claim is novel, useful, and patentable. Elaboration would serve no useful purpose. The original patent having been surrendered on account of inaccuracy of description, and the reissue which is before us taken, is this valid? While the question may be serious, and its proper solution involved in some doubt, our judgment is with the plaintiff. We do not think such reissues fall within the rule promulgated in *Miller* v. *Brass Co.* 104 U. S. 350. The court was careful to note the distinction between these and such as were before it. That "the correction of a patent by means of a reissue, where invalid or inoperative for want of full and clear description of the invention, cannot be attended with such serious results as follow the enlargement of claims," is obvious. Here, we think, no more was done than to make such a correction. The single claim of the original patent is inserted in the reissue without enlargement. There is no material variation in terms, and the effect, we think, is identical. The drawings and model, as originally filed, show the precise invention described and claimed in the reissue. While the description was not entirely accurate, and might, possibly, have been misunderstood, an intelligent mechanic would, probably, if not certainly, have constructed the machine as shown and claimed in the reissue. It cannot justly be said, therefore, that any one was misled, or that anything was abandoned to the public. On the question of necessity for such a reissue, or the propriety of granting it, the judgment of the patent-office is entitled to weight. That the invention intended to be secured originally was that covered by the reissue, seems to be rendered manifest by one of the defendant's exhibits. Constructed to illustrate the machine described in the original patent, the exhibit conforms minutely to the description and claim of the reissue. Little importance is attached to the testimony intended to show that Shorey manufactured machines which did not conform to his patent.

The question of infringement does not seem difficult. The defendant's machine, as originally constructed, was, we think, in plain disregard of Shorey's patent. The defendant appears to have so considered it; or, at least, to have believed it might be so considered, for, on complaint being made, he sought a license. Subsequently (and after the plaintiff's acquisition of title) he commenced the manufacture of machines in the form here complained of. We are unable, however, to see any material distinction between these and the machines originally constructed. They do the same work in the same manner and by substantially the same means. In our judgment, the last, as well as the first, infringe the patent. The structural difference in form and size of the cutter, is not important. Shorey did

not confine himself to any particular form or size in this respect. That adopted by the defendant is as well described by the patent as the one shown by Shorey's drawings and model. The object sought by Shorey, as we have seen, was such a rotary cutter as, when combined with the stitch-forming mechanism, in the manner he indicated, would sever the fabric without obstructing its passage in feeding. This he accomplished by so constructing the cutter that a part or parts of its periphery should be nearer the axis than the remainder, and so combining and operating it as to escape contact with the fabric while the latter is in motion. The object of the defendant was the same, and he has accomplished it virtually in the same manner and by the same means. The circumstance that his machine is so operated as to do a fractional part of the cutting while the fabric is in motion, is not deemed important. The movement is so nearly completed when the cutter reaches the fabric that its contact presents no perceptible or serious interference. This, therefore, must be regarded as an immaterial difference. If not, the evasion of the patent, and, indeed, of all patents, would be easy. Nothing more would be necessary than to waive an immaterial part of the benefit derived from the invention. If the defendant had constructed his machine in precise accordance, in all respects, with Shorey's model, but so connected it with the sewing mechanism that the cutter would reach the fabric an instant before the feeding is completed,—which, doubtless, is practicable,—it would hardly be urged that this would not have been an infringement. The manner in which the machine is used does not affect the question. The manner of using does not characterize a machine. This is done by its structure and capabilities. The defendant's machine is capable of a different use from the one described, and is as well adapted to it. A slight change of cogs will allow the feeding to be completed without interference, making the operation and effect identical with that of Shorey's invention. This change may be made in a few seconds, with no greater effort than is required to loosen and tighten two screws.

Several less material points of defense, which were urged with earnestness and ability, we will not discuss. They were well worthy of consideration, and have been carefully considered. It is sufficient to say that a patient examination of the entire defense has left a conviction that the bill should be sustained.

A decree may be prepared accordingly.