## BALTIMORE CAR-WHEEL CO. *v.* NORTH BALTIMORE PASSENGER RY. CO.

*(Circuit Court, D. Maryland. July 14, 1884.)*

1. PATENTS FOR INVENTIONS—REISSUE No. 9,881.

   The third claim of reissued patent No. 9,881, September 27, 1881, to Joseph Harris, *held* void, because the reissue was after 14 years' delay, and after adverse rights had accrued.

2. SAME—REISSUE No. 3,243.

   The first claim of reissued patent No. 3,243, granted December 22, 1868, to T. B. Stewart, if construed to cover the combination of two tubes fitting one within the other without flanges, and neither made oblong in shape, is void for want of novelty, if for no other reason.

3. SAME—INFRINGEMENT—LICENSE.

   In a case in which the complainant, suing for infringement of his patent, does not proceed to enforce remedies under a license granted by him, but treats the license as no longer in force, a purchaser from the supposed licensee is not estopped from denying the validity of the patent; and in no case is a mere purchaser from a licensee estopped from denying the validity of the patent in a suit against him for infringement.

In Equity.

*R. D. Williams* and *Benjamin P. Price,* for complainant.

*Bernard Carter* and *B. F. Thurston,* for defendant.

MORRIS, J. This is a suit for the alleged infringement of two reissued patents for improvements in car axle-boxes, of which the complainant is owner by assignment, and which it is alleged that the respondent has infringed by using in its business certain car-wheels and axle-boxes which it purchased from the Bemis Car-box Company of Springfield, Massachusetts. The two patents as to which infringement is alleged are the reissue to T. B. Stewart, No. 3,243, dated December 22, 1868, the original being No. 71,241, dated November 19, 1867; and the reissue to Joseph Harris, No. 9,881, dated September 27, 1881, the original being No. 71,873, dated December 10, 1867. The Harris patent was reissued 14 years after the original had been granted, and the third claim, which is the only one drawn in question, first appeared in the reissue. This claim is for the combination with the neck or annular recess in the journal, and with the journal-box, of the key or shoulder made to slip on in the recess and straddle the journal, thereby keying the journal and the box together. The evidence is convincing that in the interval of 14 years between the original patent in which this device was not claimed and the reissue in which it was, the use of the key, shoulder, and recess in car axle-boxes had become general throughout the country; and it must be conceded, as was practically admitted in the argument of the case, that this claim comes within the rulings which hold that what is not claimed in an original patent is dedicated to the public, unless the patent is surrendered and reissued within a reasonable time and before adverse rights have accrued. *Miller* v. *Brass Co.* 104 U. S. 350; *James* v.

*Campbell*, Id. 356; *Clements* v. *Odorless Excavating Co.* 109 U. S. 641; S. C. 3 Sup. Ct. Rep. 525.

With respect to the Stewart patent, the reissue having been applied for only nine months after the granting of the original, the complainant contends that so far as the objection of unreasonable delay, and subsequently acquired rights in others, is concerned, it is free from any of the vices which the supreme court has held fatal to reissued patents.

The purpose of the devices described in the first claim of the Stewart patent is to prevent dirt and dust from getting access to the journals and boxes of car-axles, and this the patentee claimed to have accomplished by a novel form of box and car-wheel. Upon the side of the axle-box next to the wheel he formed a cylindrical projection, B, having an annular outwardly projecting flange, *a*, upon its end. Upon the car-wheel, on the side next to the axle-box, he formed a tubular projection, *c*, having an inwardly projecting flange, *b*, upon its end. The cylindrical projection on the box fits into the tubular projection on the wheel, and they are slipped one into the other, and the annular space left between the cylinder and the tube is obstructed by the outwardly and inwardly projecting flanges. Of this arrangement the patentee, in his specifications, says: "It will be seen that dust would have to pass around a very circuitous route before it could penetrate far enough to reach the bearings of the journal."

As part of the improvement described in his specifications, and claimed in the second claim, Stewart constructed crescent-shaped saddles for the bearings, in a peculiar manner, which required the outside of the tubular projection on the box to be made of an elliptical or oblong shape. His first claim in the original patent is for—

"(1) The combination of the tubes, B and C, with flanges, *a* and *b*, arranged upon the box and wheel, substantially as shown."

In the Stewart reissue patent the drawings and specifications are identical with the original, but the first claim is as follows:

"(1) The combination and arrangement of the *oblong* tube, B, on the box, and the tube, C, on the wheel, with or without the flanges, *a* and *b*, substantially as described."

It thus appears that the original claim was for the combination of the two tubes, (as the cylinder and tube may be called,) with flanges upon their ends, and the reissue seeks to cover the combination simply of the two tubes without the flanges.

The question of infringement by the respondent company is a very simple one. The wheels and boxes made by the Bemis Car-box Company, and bought and used by the respondent, have the two tubes without the flanges, and neither of them is "oblong." They do not infringe the first claim of the original patent, but they do infringe the first claim of the reissued patent, if it is valid, and if the "oblong" feature of it is immaterial.

The complainant contends that the word "oblong" in this claim is merely descriptive and not limiting, because making the tube on the axle-box oblong in the Stewart device had nothing to do with the dust-excluding feature, which was the subject of the first claim, and was merely a convenience for its use in connection with the peculiar crescent-shaped bearings, which had nothing to do with excluding dust, which were the subject of the second claim, and that the original patent contained and disclosed clearly the dust-excluding invention claimed in the reissue, viz., the combination of the two tubes, one fitting within the other to exclude dust.

If the first claim of the Stewart reissue be valid, and this the construction to be put upon it, then it becomes important to examine the defense of want of novelty set up by the respondent's answer, and to determine whether it was new and patentable, at the date of the Stewart patent, to combine the two tubes, without the flanges and without the oblong shape, one fitting within the other, for the purpose of excluding dust from the bearings of axles. In support of this defense the defendant has put in evidence the following letters patent, with illustrative models of the devices therein described: Crannell patent, No. 35,870, July 15, 1862; Beers patent, No. 48,-899, July 25, 1865; Gillett patent, No. 52,561, February 13, 1866; Steele patent, No. 62,231, February 19, 1867; Mansell patent, No. 14,089, April 24, 1852. A careful examination of these devices, aided by the clear statement of their several characteristics contained in the expert testimony and in the brief of the learned counsel for respondent, satisfies me that this defense is made out. It was not new, and did not require invention at the date of the Stewart patent, to construct a wheel and axle so as to have a projection on one to fit into a tubular recess on the other, for the purpose of obstructing the entrance of dust between the bearings of the axle and the box. These patents show that it had been done in making carriage-wheels; that it had been applied to loose wheels for cars; and even if it be a fact that it had never before been applied to car-wheels fixed upon the axles, such an application would not require invention, and would be merely a double use. I think there can be no doubt that if the first claim of the Stewart reissue receives the construction contended for by complainant's counsel, and which is absolutely required to make the complainant an infringer, then it must be held void for want of novelty. This view of the state of the art would seem to have controlled the action of the commissioner of patents, who refused to grant the reissue, striking out the word "oblong," and gave as his reason: "The main tubes, B and C, without the subordinate flanges, *a* and *b*, is substantially the same as the ordinary carriage-hub and its projecting flange, and the arrangement and purpose are identical." It would seem, therefore, that there was nothing new in the Stewart device except the flanges, which were designed to increase the obstructions to the entrance of dust, and the oblong shape,

which admitted of the device being used in connection with the cres-
cent-shaped saddles, which were the subject of his second claim.

This disposes of the case if the respondent is permitted to put its
defense upon the invalidity of the complainant's patents.

It is, however, strenuously argued by complainant's counsel that
the respondent is estopped from denying the validity of the Stewart
patent, both the original and the reissue, because the Bemis Car-box
Company, from which the respondent purchased the wheels and axle-
boxes complained of, had recognized the validity of their patent by
entering into a written agreement, in which it acknowledged that
similar boxes made by it were infringements, and agreed to pay a
sum in compensation therefor, and accepted a license to continue to
make similar boxes under the reissued patent during its term, the
complainant, however, reserving in that agreement the exclusive
right to make the wheels and axles to be used with such boxes.   With
regard to this position assumed by the complainant, two things are
to be observed:   *First*, that it is not suggested anywhere in the bill
of complaint; and *second*, that the present respondent is not pretended
to have been a party to the written agreement.   The bill of complaint
makes no allegation whatever with regard to any license, and dis-
closes nothing whatever with regard to it.   It is, in form, the usual
bill of complaint against an infringer praying for an injunction and
an account of profits, and alleges that the respondent, "without license
of your orators and against their will, and in violation of their rights,
have used, etc., the said improvement."

The answer, after setting up the defenses of want of novelty and
invalidity of the Stewart reissued patent, avers, upon information
and belief, that the Bemis Car-box Company was, by the writing of
January 25, 1881, licensed by the complainant to make the axle-
boxes purchased by the respondent.   To this answer the complain-
ant filed a general replication.   These pleadings show that the com-
plainant, as the foundation of his case, treats the license as forfeited,
and as no longer having any force or efficacy.   It is true that in a
case in which the licensor affirms the contract, and is pursuing his
remedies under it, the licensee is estopped from denying the validity
of the patent; but it cannot be declared void by one party, and yet
estop the other.   *Burr* v. *Duryee*, 2 Fisher, 283.   But, without regard
to the pleadings, I do not see how the proposition can be maintained
that the respondent, who is not a party to the written agreement,
can be estopped by its admissions.   If the license is still in force, the
complainant's only remedy is against the Bemis Car-box Company;
if it is not in force, then the complainant was right in proceeding
against the respondent as an ordinary infringer.

It is to be noticed, also, that the estoppel, to avail in this case, must
go further than a mere acquiescence in the validity of the Stewart
reissue: it must go to the extent of admitting that the wheels and
boxes used by respondent are infringements, notwithstanding the ab-

sence of the "oblong" shape of the tube, which is one of the elements of the first claim of the reissue. As against the Bemis Company, complainant may perhaps contend successfully that this was admitted, and cannot now be denied by that company; but I am at a loss to see how and when this respondent admitted it, and estopped itself from denying it. An estoppel cannot arise unless it grows out of a transaction to which the person estopped is a party or privy, and I do not understand that one who may purchase a patented article from a licensee of the patentee can, from that fact alone, be held bound by the license or its recitals, or that it establishes any contractual relations between such a purchaser and the patentee.

Bill of complaint dismissed.