# LOTZ v. KENNEY.

PATENTS; INTERFERENCE; RULES OF PATENT OFFICE; CLAIMS; CONCEPTION; AMENDMENT.

1. In view of the rule of the Patent Office prohibiting a patent to issue for two separate inventions, where the invention of the issue in an interference was disclosed in a prior application to one of the parties, but no specific claim was made therefor until after the issue of a patent to the other party, the claims cannot be inserted by amendment, but the applicant must file a new and divisional application, or abandon that part of his invention.

2. Where the subject-matter of an invention is contained in the application for a patent, though not followed by a specific claim, the applicant may be allowed to amend by setting up a new claim to the invention, or a part thereof not before claimed, notwithstanding sec. 4888 U. S. Rev. Stat., U. S. Comp. Stat. 1901, p. 3383, which requires that the application shall not only contain a full description of the invention, but also claims for the same; and, where the conditions of the original application require division, instead of amendment merely, to secure a patent embracing the additional claims, the rule is the same (following *Phillips* v. *Sensenich, ante,* 159); and the new application will date back to the original one, securing to the applicant the benefit of a constructive reduction to practice as of that date. (Following *Duryea* v. *Rice,* 28 App. D. C. 423.)

3. The failure of one of the parties to an interference to make a specific claim of the issue under his original application, or by division, until after the other party filed his application, will not preclude him from then making it by division, where the invention was disclosed, although not claimed, in the original application, and the making of the claim involved no material alteration in the specifications. (Distinguishing *Bechman* v. *Wood,* 15 App. D. C. 484, and following *McBerty* v. *Cook,* 16 App. D. C. 133; *Luger* v. *Browning,* 21 App. D. C. 201; and *Furman* v. *Dean,* 24 App. D. C. 277.)

4. Testimony on behalf of one of the parties to an interference, the issue of which calls for a transparent device which temporarily arrests the velocity of an air current in a dust sweeper, and enables the operator or observer to ascertain when the dust has been completely removed,—that he had invented and constructed a three-compartment box with removable glass sides, through which the collection of the dust therein could be observed, does not show conception of the invention of the issue, which requires not only a transparent device, but one of such size and construction that it will not permit deposit of any of the dust; otherwise it will not answer the required purposes.

No. 467.    Patent Appeals.    Submitted March 13, 1908.    Decided April 7, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.        *Affirmed.*

The facts are stated in the opinion.

*Mr. John H. Miller* and *Mr. Timothy D. Merwin* for the appellant.

*Mr. Vernon M. Dorsey* and *Mr. Thomas Ewing, Jr.,* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents awarding priority of invention of a "Means for Observing Dust-Laden Currents," to David T. Kenney, in an interference proceeding with Augustus Lotz.

The issue is contained in the four following counts:

"1. In combination with a passage for a current of dust-laden air, means in said passage for intercepting the current, such means including a transparent chamber, in which the action of the intercepted current can be observed.

"2. In combination with a passage for a current of dust-laden air, means connected in said passage for changing the direction

of the current, such means including a transparent receptacle, in which the action of the current in its changed direction can be observed.

"3. In combination with a passage for a current of dust-laden air, means in said passage for intercepting the current and compelling it to change its direction, and a transparent chamber into which the intercepted current is admitted and from which it is discharged.

"4. In combination with a passage for a current of dust-laden air, a transparent chamber projecting at an angle to the general direction, of said passage, and means for compelling the current to enter said chamber and to leave said chamber and return to said passage."

The original application of Kenny was filed November 29, 1901, and the application in the interference was filed as a divisional one June 1, 1905. Lotz filed June 3, 1904, and a patent was issued to him thereon, September 6, 1904, No. 769,618.

Augustus Lotz, in his preliminary statement, alleged conception on or about August 1, 1892, drawings made on or about February 1, 1893, disclosure to others on or about May 1, 1895, reduction to practice about July 1, 1900. Kenney's preliminary statement is not produced in the record, for the reason, doubtless, that he took no testimony and rested his case on the date of conception and reduction to practice, claimed as obtained by the filing of his original application.

Testimony on behalf of Lotz tended to show the construction and use of a device about July, 1901, which, it is claimed, embodied the invention of the issue. It is also contended on behalf of Lotz that Kenney was not entitled to amend his original declaration, and, by means of his second application, carry back his date of conception and constructive reduction to practice to the date of the original application. The tribunals of the Patent Office, in succession, awarded priority to Kenney.

We will consider the questions presented, beginning with the second one.

A part only of the specifications and drawings of Kenney's original application is contained in the record. It does not ap-

pear what his claims were, but we understand that the application covered an entire apparatus for removing dust by suction from the floors of rooms, etc., with claims therefor. The specification recites that "the invention consists of certain features of construction and combination of parts to be hereinafter described and then particularly claimed." Thereafter follows a description referring to his drawings in detail, which concludes thus: "In figure 4, the branch pipe 50 which leads to the hand implement or corresponding part, is connected with a head 51, by a tube 52, which has a sliding connection with the head 51 into which it is inserted. The inner end of the tube 52 is inserted into a tubular glass 53, closed at one end and at the other, and coupled to the head 51 so that it may be used for the purpose of demonstration, in observing the quantity of dust sucked through the tube 52." The drawing accompanying the application shows this means for observing the dust-laden air current, in its passage from the hand implement or sweeper to the receiving device or chamber where the dust is deposited. The record does not show the different actions in the Patent Office on this application, but no doubt there were objections and suggestions made from time to time. It appears, however, that, after the issue of the patent to Lotz, the applicant amended by inserting the claims of the issue, which were copied from the patent. On July 15, 1905, the Examiner reported that the claims are for separate and distinct inventions, and notified the applicant that, as the claims for carpet cleaners have had consideration, the applicant is required to restrict his claims by the cancelation of the claims aforesaid.

In the meantime, on June 1, 1905, the application of the interference was filed. In this he says: "In my prior application, filed November 29, 1901, serially numbered 84,058, I have shown an apparatus for use in such a system, and, in the said application, have shown in connection therewith an observation chamber having transparent walls, through which the dust-laden air was caused to pass on its way from the hand tool to the pump by which the vacuum was produced, whereby the amount of dust carried by the air can be ascertained, and in

this application, which is filed as a division and as a continuation of the said prior application, I claim the means therein shown for so observing the character of the air current." After referring to the drawings and describing them, he made five claims, four of which are identical with those of the issue.

It is quite clear that the invention of the issue was disclosed in the prior applications, though no specific claims therefor were made until after the issue of the patent to Lotz. The claims could have been inserted therein by amendment, but for the rule of the Patent Office which does not permit a patent to issue for two separate inventions. Under such conditions, nothing remained but to file a new and divisional application, or to abandon this part of the invention.

The first contention on behalf of the appellant, is that, as sec. 4888, Rev. Stat. U. S. Comp. Stat. 1901, p. 3383, requires that the application shall not only contain a full description of the invention, but also contain claims for the same, it is not permissible to amend by setting up a new claim to the invention or a part thereof not before claimed. The unsoundness of this proposition in a case where the subject-matter is contained in the application though not followed by a specific claim therefor, has been pointed out in the recent case of *Phillips* v. *Sensenich, ante,* 159.

Where the conditions of the original application require division, instead of its amendment, merely, to secure a patent embracing the additional claims, the rule is necessarily the same, as held in the case last cited; and the new application dates back to the original one, securing to the applicant the benefit of a constructive reduction to practice as of that date. *Duryea* v. *Rice,* 28 App. D. C. 423, 435.

It is further contended that, by Kenney's failure to make the specific claim of the invention of the issue under his original application, or by division, until after Lotz entered the office with an application therefor, he must be regarded, as to Lotz at least, as having lost his right now to make the claim. The following decisions are relied on to support this contention. *Miller* v. *Bridgeport Brass Co.* 104 U. S. 352, 26 L. ed. 784;

*Chicago & N. W. Co.* v. *Sayles,* 97 U. S. 554, 24 L. ed. 1053;
*Bechman* v. *Wood,* 15 App. D. C. 484, *Miller* v. *Bridgeport
Brass Co.* was a case of a reissued patent, and it was there held
that, when a specific device or combination only is claimed, and
a patent issued therefor, any other device or combination dis-
closed but not claimed is regarded as abandoned to the public,
unless at least with due diligence the patentee applies for reissue,
and shows clearly that his omission to make the claim was the
result of inadvertence, accident, or mistake. The present is
not a case of that kind, nor does it come within the rule govern-
ing the other two cases. In both there were, after long delay,
material alterations of the specifications so as to cover the in-
vention then claimed. In *Bechman* v. *Wood,* 15 App. D. C.
484, 491, the original specifications did not disclose the broad
claim of the issue, and it was not made for nearly three years
after filing, and after Bechman had entered the office making
a claim for another specific form of the generic invention;
and it was said, on the authority of *Chicago & N. W. R. Co.*
v. *Sayles,* supra: "But it was not competent for Wood so
to alter his specifications as to interfere with other inventions
made prior to the alteration." Where, as in this case, the in-
vention was shown in the original application, and the making
of the claim involved no material alteration of the specifi-
cations, the rule in *Bechman* v. *Wood* does not apply. *Mc-
Berty* v. *Cook,* 16 App. D. C. 133, 138; *Luger* v. *Browning,*
21 App. D. C. 201, 205. In that case it was said: "It is sought,
also, to bring this case within the ruling in the case of *Bech-
man* v. *Wood,* 15 App. D. C. 484, and *Chicago & N. W. Co.*
v. *Sayles,* supra, which latter was the decision that determined
the ruling in the case of *Bechman* v. *Wood.* The contention of
the appellant in this regard, if sustained, would apply to all
cases in the Patent Office wherein the claim of one application
is suggested to another applicant for the purpose of an inter-
ference thereupon to be declared. But the case of *Bechman* v.
*Wood,* as explained in the case of *McBerty* v. *Cook,* was not
intended to have any such application. The distinction is well
pointed out by the board of Examiners-in-Chief in their opinion

filed in this case.  It is that, when new matter is introduced into an application, it cannot be allowed to dominate previous claims of another applicant; but that when matter has been previously disclosed, although not formally claimed, it is proper to be included in a subsequent formal claim, and may take precedence of previous claims advanced by another applicant." See also *Furman* v. *Dean,* 24 App. D. C. 277, 281.

This brings us to the consideration of the other question, namely, whether the invention of the issue was conceived and reduced to practice by Lotz before Kenney's original application was filed.  If it was he is entitled to the award of priority. The device of the issue as described in the specifications and illustrated by the drawings consists of a comparatively small glass tube connected with the pipe bearing the dust-laden current, at a point between the hand implement used on the carpet and the chamber for receiving the deposit of the dust, in such manner as to intercept and partially arrest the dust-laden current and enable one to readily observe when the dust ceases to pass from the sweeper.  This is the transparent chamber or receptacle of the issue, in which no dust is, or is intended to be, deposited.  This is clearly shown in Lotz's description, where it is said: "I discovered that, if means be employed in the tube, pipe, or hose for temporarily diverting the air current, the dust in the air will become visible through a suitable glass, and this without in any way affecting the main operation. * * * The diverted current expands into the glass chamber in a condition of disturbance, the effect of which is clearly visible in the eddying and whirling of dust, tending to precipitate, but unable to do so on account of the air pressure from behind and the suction ahead."  It is apparent, also, that the purpose of the observation chamber would not be accomplished if the dust was permitted to settle in it.

The testimony of Lotz tended to show the construction of a box in July, 1901, which is claimed as embodying the invention of the issue.  The tribunals of the office found that this box was not used until about February, 1902, and two held that, even if it embodied the issue, Lotz had not used due diligence

prior to the entry of Kenney in the field. All concurred in holding that it failed to show conception of the invention of the issue. It was a large wooden box made in three compartments as indicated in the sketch by which it was constructed. The top was removable and a piece of glass was inserted in one side of each compartment. The suction pipe discharges into compartment 1, and is then continued into and through compartments 2 and 3. Lotz has a patent issued March 11, 1902, on an application filed December 4, 1900, for an "Apparatus for Cleaning Carpets," in which a similar construction is shown as a receiving chamber for dust. It is therein stated that the heavier particles of the discharged material are deposited in the first compartment, the lighter being carried into the second, where the heavier particles remaining will be deposited. The remaining particles are carried into the third compartment, which is partly filled with water in which the end of the discharging pipe is submerged, and in consequence of which all foreign matter is collected in the water. The pipe proceeds from compartment 3 to the suction pump. There was no glass in the side of this box, which, like that in the sketch, is square and with a sectional area much greater than the pipe. Lotz testified that the purpose of the glass inserted in this second box was to enable the action of the current to be observed. He said that the great difference in the cross-sectional area of the box and the pipe "reduced the velocity of the air to such an extent that it not only made the dust visible, but precipitated the heavier particles which lodged in the bottom of the box to the extent until the air agitated it and carried it further." One of his witnesses, Herbst, who saw the operation in February, 1902, said that "it was perfectly satisfactory, as far as I know. It showed plainly that it worked all right. *It showed how the dust came out and gathered in the box.*" Another said it showed the dust going into the box. There was nothing tending to show that there was any other dust collector than this box. As described by Herbst: "The model consisted of a sweeper connected with the hose to an air pump, and the box being between the sweeper

and the air pump to demonstrate the amount of dust being removed from the carpet."

We agree with the tribunals of the office that this device is not an embodiment of the issue. A dust-collector between the sweeper and the pump is an essential part of the carpet-cleaning apparatus. This compartment box seems to be nothing more than the dust collector of the former patent, before mentioned, with panes of glass inserted in one side of each compartment through which the collection of the dust could be seen. It is supplied with the same removable top for the removal of the dust collected therein. The first compartment evidently serves as a place for the settlement of the heavier particles, as described in the earlier patent before mentioned, while the lighter particles are successively deposited in the second and third compartments. The issue calls for a transparent device which temporarily arrests the velocity of the current, and enables the operator or observer to ascertain when the dust and removable particles have been completely removed by the sweeper. It must not only be transparent, but of such size and construction that will not permit the deposit of any of the dust; otherwise it would not answer the required purpose. That it is intended not to be a part of the dust-collecting chamber, but to be located at some convenient point between it and the sweeping implement, is evident. Moreover, it must be a transparent chamber. We are not prepared to say that, if such a box had been used separately, and so constructed as to prevent the settlement of any dust on its way to the collector, it might not be regarded as a transparent chamber within the meaning of the issue. But, considering its construction as a compartment of the dust collector, and the fact that it precipitated and retained a part of the dust, we cannot regard it as the transparent observation chamber of the issue. Under favorable conditions of light, the observer might have been enabled to see the deposit of dust, but it is not the transparent chamber of the issue, in which no dust can be deposited, and which enables the observer, under all conditions, to determine when the extraction of dust from the fabric that is being swept has ceased.

The decision awarding priority to Kenney must be affirmed. It is so ordered, and that this decision be certified to the Commissioner of Patents.                              *Affirmed.*