RAILWAY REGISTER MANUF'G CO. *v.* BROADWAY & SEVENTH AVE. R. CO.[1]

SAME *v.* CENTRAL PARK, N. & E. R. R. CO.

*(Circuit Court, S. D. New York. February 5, 1886.)*

1. PATENTS FOR INVENTIONS—DEVICES SHOWN BUT NOT CLAIMED IN PRIOR PATENT TO SAME INVENTOR.

Ransom filed an application for a patent for fare-registers, July 12, 1879, which was subsequently divided into divisions A and B. A patent was issued on division A, April 20, 1880. The claims sued on in this case were added to division B, by amendment, September 27, 1881, never having been made before. The subjects-matter of these claims arose upon, belonged with, and were not separable from, the things which remained in division A. Defendants' devices, which were alleged to infringe these claims, were made under a patent to Reuben M. Rose, the application for which was filed nine or ten months after Ransom's patent on division A was issued, and more than seven months before the claims in controversy were inserted in division B. *Held*, that the question whether Ransom could have a valid patent for the claims sued on is not like that as to inventions of distinct parts of machines described, but not claimed, in applications for inventions of other parts, as in *Graham v. McCormick*, 11 Fed. Rep. 859, and *Vermont Farm Machine Co. v. Marble*, 19 Fed. Rep. 307.

2. SAME—REISSUE—ABANDONMENT OF INVENTION.

One reason why a patentee cannot have a valid reissue to cover parts of his invention described and not claimed, when the omission to make the claim is not caused by inadvertence, accident, or mistake, is because the parts of the invention not claimed are by this course abandoned to the public, and the right to claim them is gone.

3. SAME—SECTION 4920, REV. ST.

The defense of abandonment to the public is not confined to reissued patents, but is given generally by the statute to all patents.

4. SAME—INTERVENING RIGHTS OF THE PUBLIC.

Where a patentee shows and describes, but does not claim, in his patent certain features of his invention, he cannot have valid claims for these features in a subsequent patent, if the rights of the public have intervened.

5. SAME—BENTON PATENT, NO. 260,526, JULY 4, 1882—FARE-REGISTER.

This patent sustained on reargument, (former decision 22 Fed. Rep. 656;) and the inventor being shown to have made the invention at least before September 22, 1877, he is not anticipated by the English patent to William Robert Lake, sealed November 14, 1877, as the date of sealing is understood to be the time when it became patented under the laws.

6. SAME—EXPERIMENTAL USE IN PUBLIC.

A public use, for the purpose of ascertaining the completeness of a device, for more than two years prior to the application, will not defeat a patent.

7. SAME—CONSTRUCTION OF CLAIMS—INFRINGEMENT.

A patented invention is to be construed in view of what existed at the time it was made: and all things are infringements that are brought out afterwards, and come within its scope.

In Equity.

*Edward N. Dickerson, Jr.*, for orator.

*John Dane, Jr.*, and *John F. Dillon*, for defendants.

WHEELER, J. These causes have been once before heard and decided. 22 Fed. Rep. 656. They have been opened for further proof,

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

and now heard again. They are brought upon patents for inventions Nos. 265,145, granted to Newman A. Ransom, assignor to the orator, for a fare register and recorder, for alleged infringement of claims 12 to 17; and 260,526, dated July 4, 1882, granted to John B. Benton, assignor to the orator, for a fare-register, for alleged infringement of all its claims.

Ransom made application for a patent on this fare register and recorder, with 31 claims, July 12, 1879. These claims were all rejected but one, on references to prior patents and publications. The specification was amended with 11 new claims, the fifth, sixth, and seventh of which covered means described in the specification for setting partial or trip registering wheels back to zero, a detent or holder for locking a zero-gathering and window-covering plate from forward rotation, and a combination, with a partial or trip register, of a turning plate for setting it to zero, and mechanism for indicating the number of times it was set at zero. The first four of these claims were rejected on a reference to a prior patent, the fifth, sixth, and seventh were found to interfere with a pending application of Benton, and further action was suspended to await the result of the interference. Thereupon Ransom filed a disclaimer of those things which have been mentioned as covered by the fifth, sixth, and seventh claims, specifying them particularly, and stating that he did not claim them in that application, as such subjects-matter were described and claimed in another pending application filed by him August 30, 1879, and designated as division B, which was filed, specifying and claiming those things on that day. The remainder of the original application was continued as division A, which resulted in patent No. 226,626, dated April 20, 1880, having five claims, the first of which was for a combination, in a fare-register, of a trip-register capable of being reset at zero; a total register moving forward concurrently with the trip-register; and mechanism, independent of the total register, for indicating the number of times the trip-register was reset, and the number of fares registered between the times of resetting; and the other four of which were the last four of the eleven remaining after the rejection of the first four, and the transfer of the subjects of the fifth, sixth, and seventh to division B. This patent had on its face a disclaimer of the things transferred to division B, specifying them as made the subjects-matter of that application. An interference was declared between division B and Benton's application, July 15, 1880, on which priority of invention was awarded to Benton, November 13, 1880. Reuben M. Rose made application for a patent for a fare register and recorder, February 12, 1881. Ransom amended the specification of division B, March 23, 1881. Patent No. 244,314 was granted to Rose, dated July 12, 1881. The claims of the Ransom patent now in controversy are for various combinations of a trip-register, independent resetter, graduated paper dial, yielding backing for the dial, marker, yielding marking arm, alarm,

actuators, and mechanism, whereby the dial will show the aggregate number of fares, and were made by amendment to division B, September 27, 1881, having never been made before. The patent was granted September 26, 1882. The defendant's machines, so far as they may infringe these claims, were made under the Rose patent. Question is now made as to the validity of these five claims, and it is different from any question considered in the cases before. The specific devices which were made parts of the subjects-matter transferred to division B do not enter into any of the combinations of these claims. Neither is the combination which was a part of those subjects-matter the same as or similar to either of these combinations. The trip-register was an element of that combination, and is an element of three of these. It is also an element in the combination of the first claim of patent No. 226,626 issued upon division A. All the elements of the combinations of these five claims enter into the structure of the machine which was the subject of the original application, and these combinations were parts of the invention covered by that application. They were not transferred to division B, and did not arise upon, nor belong with, the subjects-matter of that division. What was not transferred to division B remained in division A. These combinations arose upon and belonged with the things which so remained. They were not separable from the things which remained in the old application; the things which went to division B were separable from them, and did not take them into that division. When the patent No. 226,626 was granted upon division A, what was left of that division not covered by the claims of that patent was in the same situation as if division B had never been separated from division A. There was nothing transferred at that time from division A to division B. The former went to issue as an application by itself. The application of Rose was not made until between nine and ten months after that patent was granted, and about three months after the interference between division B and Benton's application had been decided in favor of Benton; and it was made over a month before the specifications of division B were amended after the decision on the interference, and more than seven months before the claims under consideration were made. Ransom had no claims pending at that time. The field of invention outside of the claims of Ransom's patent was apparently as open to Rose as to Ransom, except so far as Ransom's application might show that Rose was not the first inventor. Rose's patent and the infringement are entirely outside of division B as it stood at that time. If Rose's patent is for anything outside of the specifications of division A, he is, as to that, so far as these cases show, the original and first inventor of that, and his patent is valid to that extent, so far as appears, and a good justification for so much of the infringement of the orator's patent if there is such infringement of that. This patent is not valid against the patent of Rose unless Ransom could have a valid

patent for these combinations, as shown in division A, not covered by the claims of that patent, and have it upon the application in division B.

The question whether he could or not is not like that as to inventions of distinct parts of machines described in applications for inventions of other parts, and not claimed.   *Buttin* v. *Taggert*, 17 How. 74; *Graham* v. *McCormick*, 11 Fed. Rep. 859; *Vermont Farm Mach. Co.* v. *Marble*, 19 Fed. Rep. 307.   It is a question as to an integral part of an invention described and made the subject of claims in other forms.   The applicant said, in the amendment after Rose's application:

"This division is aimed to cover certain new combinations not claimed in my said patent of April 20, 1880, nor omitted therefrom by inadvertence, accident, or mistake."

The elements of the combinations were covered by claims in other forms, and those claims were parts of the same invention that would include the combinations.   When these claims were made on division B, the patent-office suggested that the proper course would be to apply for a reissue of the patent granted on division A.   The want of inadvertence, accident, or mistake was set up as an answer to that suggestion because it would leave no ground for a reissue.   It is understood that one reason why a patentee cannot have a valid reissue to cover parts of his invention described, and not claimed, when the omission to make the claim is not caused by inadvertence, accident, or mistake, is because the parts of the invention not claimed are by this course abandoned to the public, and the right to claim them is gone.   *Miller* v. *Brass Co.*, 104 U. S. 350; *James* v. *Campbell*, Id. 356; *Mahn* v. *Harwood*, 112 U. S. 354; S. C. 5 Sup. Ct. Rep. 174; *Coon* v. *Wilson*, 113 U. S. 268; S. C. 5 Sup. Ct. Rep. 537.   These claims would appear to have been a proper subject for a reissue of the patent granted on division A, if Ransom was entitled to them when he made them on division B; and, if he was not entitled to them on account of the abandonment shown by his course on division A, they would not become valid claims by being attached to any other application.   The defense of abandonment to the public is not confined to reissued patents, but is given generally by the statute to all patents.   Rev. St. § 4920; *Railway Co.* v. *Sayles*, 97 U. S. 554.   The rights of the public had intervened, and been followed by the application and patent of Rose, before there was any attempt on the part of Ransom to make these claims, and all the grounds on which claims made after taking a patent are held to be invalid appear against them.

The authority to grant a patent appears to depend on an application made and pending for that purpose.   Rev. St. § 4886; *Eagleton Manuf'g Co.* v. *West, Bradley & Carey Manuf'g Co.*, 111 U. S. 390; S. C. 4 Sup. Ct. Rep. 593.   It is not very plain where there was any application pending as a ground for these claims.   What was not re-

served out of the original application to go into division B was left in division A, and was disposed of there, and not left pending anywhere. The subject of these claims was left in division A, and went to issue, and appears to have ended with that division. Upon such consideration as has now been given to these claims, they appear to be invalid.

The evidence introduced since the former hearing does not affect the Benton patent at all; but the whole case is open, and that part of it has been reargued, examined, and considered. The object of these fare-registers is to prevent frauds by those collecting fares. They contain a trip-register, which begins at zero, on which the conductor registers each fare as it is received from the passenger, and who is relied upon to see that the registration is made. This register has a dial with a hand that moves forward and indicates the number of fares which have been registered on that trip. At the beginning of each trip the register is to be reset, and the trip-hand made to point at zero. If this is not done, and the register and hand are left away from that point, opportunity for fraud in accounting for the fares registered on that part of the trip is left open. Benton invented, and his patent is for, a tell-tale hand which, when set with the trip-hand at zero, moves with it, indicating the true number of fares registered, and cannot be set back to zero unless the trip-hand is also set there, and which, when the trip-hand is set only a part of the way back to zero, remains at the place where it is stopped, and indicates where the trip-register was started, and shows the attempt to cheat. His application for the patent was made October 31, 1881. A hand on a dial to a thermometer, to be left to indicate the highest and lowest temperatures, was shown in patent No. 68,681, granted to Martin Ames for a self-registering thermometer, dated September 10, 1867; and one to be left on the dial of a steam-gauge, to show the highest pressure, was described in patent No. 124,816, granted to Thomas C. Hargrave, for an improvement in registering steam-gauges, dated March 19, 1872. Neither of these has the combinations of such a hand with a trip-register of fares required to be set to zero at each trip. Such a hand, for a similar purpose in a fare-register, was patented in England to William Robert Lake, November 14, 1877, and was the subject of patent No. 245,221 for an indicator for fare-registers, applied for by Reuben M. Rose, April 14, 1881, and dated August 2, 1881, under which this part of the fare-register of the defendants is made. Benton is shown by uncontradicted oral evidence to have made his invention as early as March 22, 1877, before even the provisional specification of Lake was filed; and by written and quite conclusive evidence to have made it before September 22, 1877, which is earlier than Lake's patent was sealed, which is understood to be the time when it became patented within the meaning of the patent laws. Benton is thus clearly shown to be the first inventor. The invention was in use in public, for the purpose of ascertaining its

completeness, more than two years prior to his application; but such public use for that purpose would not defeat the patent.  *Elizabeth* v. *Pavement Co.*, 97 U. S. 126.

Much stress is laid by the defendants upon the question of infringement.  The defendants' registers have a tell-tale hand in the combinations of the patent.  Moving it forward moves the trip-hand forward with it, but moving the trip-hand forward in registering fares does not move the tell-tale hand forward.  The trip-hand is set to zero by moving the tell-tale hand forward, only taking the trip-hand with it.  If it is stopped short of zero, and the registering of fares begun, the tell-tale hand remains where it is stopped, to indicate the place where it is stopped, and the attempt at fraud in commencing the registrations of a trip at that place.  The tell-tale hand of the patent is reset by being turned backward to or towards zero by the trip-hand; and if that is stopped short of zero, and the registering of fares begun, the tell-tale hand remains there to show the place where the trip register and hand were stopped, and the attempt at fraud in commencing the registrations of the trip from there.  The trip-hand is left in each case to show the wrong place in commencing registration. The difference is only in the means by which it is brought there. When there, they are equivalents in the combinations with the other parts in accomplishing the desired result.

The defendants' expert was asked in cross-question 74 if he contended that the defendants' apparatus did not contain the combinations of the patent, and he answered: "Construing such claims broadly, as covering usual mechanical equivalents, I consider that the defendants' apparatus does contain such construction."  The other parts of his testimony show that he considered the patent to be limited, by the prior patents of Lake and Rose, to the differences between it and them.  But as priority of invention is awarded to him over them, his patent is to be construed as broadly as if their patents had never existed, nor their inventions made.  His patented invention at the time when it was made is to be construed in view of what then existed.  All things are infringements that are brought out by others afterwards, if they come within its scope.  *O'Reilly* v. *Morse*, 15 How. 62; *Water Meter Co.* v. *Desper*, 101 U. S. 332; *Mason* v. *Graham*, 23 Wall. 261.  This answer of the expert was understood to substantially admit infringement of this patent, if it was valid, when the case was under consideration before, and to obviate the necessity of such extended examination of this part of the case as has been given to it now.

These views lead to a decree for the orator as to the Benton patent, and for the defendants as to the Ransom patent.  The costs are apparently about equal on each patent, and thus far no costs should be allowed to either party.  Let there be a decree that claims 12 to 17 of the Ransom patent are invalid; that the Benton patent is valid, and is infringed by the defendant; and for an injunction and an account in each case, without costs to the time of this decree.