### MAST, FOOS & CO. et al. v. IOWA WINDMILL & PUMP CO.

(Circuit Court of Appeals, Eighth Circuit. October 5, 1896.)

#### No. 689.

1. PATENTS—VALIDITY OF REISSUE—ENLARGEMENT OF CLAIMS—LACHES.

A delay of nearly three years in applying for a reissue enlarging the claims of a patent renders such reissue void, where in the meantime a new device has come into use, which was not covered by the original claims, but which is brought within the claims of the reissue. 68 Fed. 213, affirmed.

2. SAME.

The Bean reissue, No. 8,631 (original No. 175,588), for an improvement in pumps, is void because of laches in applying for the reissue, which enlarged the claims so as to include a subsequent construction. 68 Fed. 213, affirmed.

Appeal from the Circuit Court of the United States for the Northern District of Iowa.

This suit was brought by Mast, Foos & Co. and William D. Hooker, the appellants, against the Iowa Windmill & Pump Company, the appellee, to restrain the infringement of claims 1, 2, 3, and 4 of patent No. 8,631, reissued to Roscoe Bean under date of March 25, 1879, the original patent being No. 175,588, dated April 4, 1876; also to restrain the infringement of certain claims of patents No. 339,445 and No. 259,394, which patents were issued, respectively, to Samuel W. Martin under date of April 6, 1886, and to William D. Hooker under date of June 13, 1882. Defenses were interposed by the defendant below to the entire bill. The circuit court sustained the charge of infringement so far as it related to the two patents, Nos. 339,445 and 259,394, issued to Samuel W. Martin and to William D. Hooker, and granted the relief prayed for as to those patents. It held, however, that the first, second, third, and fourth claims of reissued letters patent No. 8,631, granted to Roscoe Bean on March 25, 1879, were void. It accordingly dismissed the bill in so far as it was founded upon the claims of that patent. 68 Fed. 213. The complainants below have appealed from that part of the decree holding certain claims of the reissued patent to be void. The controversy therefore relates wholly to the validity of the first four claims of the reissued patent. The following are copies of the specifications of the original patent, No. 175,588, issued to Roscoe Bean on April 4, 1876, and of the reissued letters patent founded thereon, dated March 25, 1879. For convenient comparison, the specifications have been placed in opposite columns; and, for the purpose of more clearly indicating certain changes that were made in the original specification, some parts of the specifications are printed in italics:

| Original. | Reissue. |
|---|---|
| The nature of my invention consists in the construction and novel arrangement of a pump stock, connected with the cylinder by two tubes, one forming an air chamber and the other the discharge pipe; *said tubes opening into the cylinder directly opposite each other*, as will be hereinafter more fully set forth. | The nature of my invention relates to force pumps, and it consists in a tubular air chamber attached to the pump stock or platform flange, and connecting to and opening into the cylinder *or chamber*, *and forming also a support for the same.* |
| | My invention further consists in a supporting tubular air chamber and discharge pipe attached to the pump stock or flange plate, and connecting with and opening into a cylinder *or chamber*; also, in the combination of parts as will be hereinafter more fully set forth and pointed out in the claims. |

### Original—Cont'd.

A represents an ordinary pump or pump stock as used above ground. B is the pump cylinder, connected to the pump, A, by means of two tubes, C and D. *The lower ends of these tubes are screwed into pieces, a, a, between which the cylinder, B, is placed,* and the parts then firmly bolted together; the pieces or elbows, *a, a, open into the cylinder on opposite sides thereof, and in the same horizontal plane.* The tube, C, is closed at its upper end, and forms, not only a support for the pump, but also the air chamber. This air chamber, being in the form of a tube, has a direct action on the water, and also has greater power for forcing water, as well as to give it a more steady action. The pipe, D, extends up along the pump stock, A, and forms the discharge pipe as well as the second support for the pump cylinder. By this mode of connecting the pump stock and cylinder a substantial support is formed for the cylinder, and it is very simple and readily put together. By these means, also, the cylinder is placed down in the well below the freezing point; and in cisterns, or where the cylinder is submerged, it will not fill up with water, and at the same time connects and supports the cylinder, however deep the well may be.

By having two holes in the cylinder (one for discharge and one for the air chamber), it gives a place for the air chamber to have a direct action on the water while in use; giving it an even, steady stream, and a direct discharge for the water, independent of the air chamber.

Having thus fully described my invention, what I claim as new, and desire to secure by letters patent, is:

(1) The combination of the pump stock, A, and cylinder, B, with the pipe, C, forming the air chamber, as well as the supporter between the pump and cylinder, substantially as herein set forth.

(2) The combination of the pump stock, A, and cylinder, B, with the tubular air chamber, C, and discharge pipe, D, forming connection between the pump and cylinder, substantially as herein set forth.

(3) The cylinder, B, having the air chamber and discharge pipe opening into the same on opposite sides, substantially as and for the purposes herein set forth.

### Reissue—Cont'd.

A represents an ordinary pump stock connected to the platform flange or flange plate, A'. B is the pump cylinder, connected to the pump stock, A, or flange, A', by means of two tubes, C and D. The lower ends of these tubes *connect with the cylinder, B,* and open into the same, *or into a chamber, a, interposed in any suitable manner, the object being simply to form a connection between said cylinder and the tubes.*

The tube, C, is closed at its upper end, and forms, not only a support for the pump, but also the air chamber. This air chamber, being in the form of a tube, has a direct action on the water, and has also greater power for forcing water, as well as to give it a more steady action.

The pipe, D, extends a suitable distance above the flange, A', and forms the discharge pipe as well as the second support for the pump cylinder.

By this mode of connecting the pump stock or flange with the cylinder *or chamber, a,* substantial support is formed, which is very simple and readily put together. By these means, also, the cylinder may be placed down in the well below the freezing point; and in cisterns, or where the cylinder is submerged, it will not fill up with water, and at the same time connects and supports the cylinder, however deep the well may be.

By having two openings (one for the discharge and one for the air chamber), it gives a place for the air to have a direct action on the water while in use, giving it an even, steady stream, and a direct discharge for the water, independent of the air chamber.

Having thus fully described my invention, what I claim as new, and desire to secure by letters patent, is:

(1) A supporting tubular air chamber attached to pump stock or platform flange, connecting to and opening into a cylinder *or chamber.*

(2) A supporting tubular air chamber and discharge pipe attached to pump stock or flange plate, connecting to and opening into a cylinder *or chamber.*

(3) In a pump a tubular air chamber forming a support for the *lower part of the pump, and connecting the same with the upper part,* substantially as herein set forth.

(4) In a pump a tubular air chamber and discharge tube, forming supports *for the lower part of the pump, and connecting the same with the upper part,* substantially as herein set forth.

(5) The cylinder, B, having the air chamber and discharge pipe opening into the same on opposite sides, substantially as and for the purposes herein set forth.

The subjoined figures, 1 and 2, are copies of the drawings attached to the original patent of Roscoe Bean to illustrate his invention. Fig. 3 represents a kind of pump that appears to have been manufactured and placed on the market subsequent to the date of the original Bean patent, but prior to the grant of the reissued letters patent No. 8,631.

H. A. Toulmin and L. Hill, for appellants.
Robert S. Taylor and Charles H. Worden, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first question to be considered on this appeal is whether the original patent, No. 175,588, granted to Roscoe Bean on April 4, 1876, was broadened by the reissued patent, No. 8,631, so as to bring within the claims of the latter patent a class or kind of pumps that were not covered by the original patent. This question was answered by the circuit court in the affirmative. 68 Fed.

213.   The trial court held, in substance, that the original patent could not be classed as a pioneer patent, and that, in view of the explicit language describing the invention found in the original specification, claims 1 and 2 of the original patent should be limited to a pump such as is shown in Fig. 1 of the foregoing statement, in which the tubular pipes, C and D (the former being an air chamber closed at its upper end, and the latter a discharge pipe), open into the cylinder or barrel of the pump, B, "on opposite sides thereof, and in the same horizontal plane," thereby forming a substantial support for the cylinder.   The trial court further held, in substance, that the original patent had been expanded in the reissue, because it appeared that the specification had been so altered in the reissue as to bring within the grasp of the reissued patent a class of pumps like that shown in Fig. 3 of the foregoing statement, in which the tubular pipes, C and D (the one being an air chamber and the other a discharge pipe), do not open into, and are not directly attached to, the cylinder, B, on opposite sides thereof, but are attached to, and open into, a chamber, F, located at any convenient distance above the cylinder, B, and below the platform of the well or cistern.   We think that no error was committed by the circuit court in holding that the original patent issued to Roscoe Bean does not fall within the category of pioneer inventions. The patentee made an improvement in an old device or old machine for elevating water, by changing to some extent the relation of its parts or elements, all of which were individually old; but he neither produced a distinctively new and useful result, nor laid the foundation of a new art, nor applied one of the known or theretofore unknown forces of nature to a new and beneficial use. Suction pumps were certainly well known and in common use when Bean entered the field as an inventor, and air chambers, in one form or another, had long been used in connection with such pumps, to increase their efficiency.   The pump invented by Bean operated upon the same principle and in the same way as other suction pumps then in use.   It raised no more water, and obviously required no less force to actuate it.   It is also apparent that the supporting air chamber employed by Bean, consisting of the elongated pipe, C, in Fig. 1, though different in form and location from those in use on older structures, nevertheless operated upon the same principle.   As the circuit court well remarked, the novelty of the invention consists in making one pipe serve the double purpose of an air chamber and a support for the cylinder, when the cylinder, to prevent freezing, is placed some distance below the platform on which the pump stock is located.   But this feature of the device was not such a wide departure from the known mode of constructing suction pumps as to justify the application of new rules of interpretation.   The patent is entitled to a fair and reasonable construction, but no greater latitude of construction can be allowed on the theory that it is a pioneer invention.

There are some expressions found in the specification of Bean's original patent which render it certain that at the date of the patent the method of constructing a pump indicated by the drawings at-

tached to the patent (Figs. 2 and 3), in which the descending air and discharge pipes are attached directly to the cylinder, on opposite sides thereof, and open into it, and thereby form a firm support for the cylinder, was the only method of constructing a pump and applying his invention which the patentee had at that time conceived or contemplated. Thus, in the second paragraph of the specification the patentee says:

"The nature of my invention consists in the construction and novel arrangement of a pump stock, connected with the cylinder by two tubes, one forming an air chamber and the other the discharge pipe; said tubes opening into the cylinder directly opposite each other, as will be hereinafter more fully set forth."

And again, in describing the mode of construction and the advantages thereof, the inventor says:

"B is the pump cylinder connected to the pump, A, by means of two tubes, C and D. The lower ends of these tubes are screwed into pieces, a, a, between which the cylinder, B, is placed, and the parts then firmly bolted together. The pieces or elbows, a, a, open into the cylinder on opposite sides thereof, and in the same horizontal plane. * * * By this mode of connecting the pump stock and cylinder a substantial support is formed for the cylinder, and it is very simple and readily put together. * * * By having two holes in the cylinder (one for discharge and one for the air chamber), it gives a place for the air chamber to have a direct action on the water while in use; giving it an even, steady stream, and a direct discharge for the water, independent of the air chamber."

The claims of the original patent were well conceived and expressed to cover the method of construction and features of novelty thus clearly described. The original specification contained no intimation that the method of constructing a pump described in the specification and drawings was merely a preferable mode of construction, and that the depending air pipe and discharge pipe might with equal efficiency be attached to a chamber located at any convenient distance above the cylinder, instead of being fastened to the cylinder itself. From the fact that the latter mode of construction was not suggested in the original specification, it is evident that that method of constructing a pump had not been conceived by the patentee. Moreover, as no method of applying the invention was pointed out, except that which was explicitly described in the specification and drawings, an ordinary person, not versed in patent law, would naturally conclude that claims 1 and 2 of the original patent were limited to a combination of parts in which the air pipe, C, and the discharge pipe, D, were attached to the cylinder on opposite sides, and opened into it.

But, aside from these considerations, the evidence in the record clearly shows that between the dates of Bean's original and reissued letters patent (that is to say, between April 4, 1876, and March 25, 1879) a class of pumps had come into use, similar to the one illustrated by Fig. 3 of the foregoing statement, in which the depending air pipe and discharge pipe opened into a chamber which was placed above the pump cylinder. It is claimed on the part of the appellee that these latter pumps were better adapted for use in deep wells with a small bore or diameter than the Bean pump, as the chamber, F, could be located a short distance below

the platform, while the cylinder was placed much further down in the well. But, however this may be, in the light of the fact that such pumps had come into use, and were being manufactured and sold, the specification of Bean's reissued patent bears the strongest internal evidence that his original specification was carefully worked over and remodeled for the express purpose of bringing the latter class of pumps within the claims of the reissued patent. It will be observed that wherever in the original specification the air pipe, C, and the discharge pipe, D, are described as being connected with and opening into the cylinder, B, on opposite sides thereof, they are described in the specification of the reissued patent as opening into a cylinder "or chamber." In one paragraph of the amended specification it is said:

"The lower ends of these tubes connect with the cylinder, B, and open into the same, *or into a chamber, a, interposed in any suitable manner;* the object being simply to form a connection between said cylinder and the tubes."

The claims of the original patent were also recast in the reissued patent so as to cover broadly an air pipe attached to the platform of the pump, and extending downwardly, and connected with the lower part of the pump, whether such pipe opened directly into the cylinder, and was attached thereto, or whether it opened into a chamber located at any distance above the cylinder. In short, a comparison of the specifications of the original and reissued letters patent, in the light of the evidence showing that pumps having an air chamber located above the pump cylinder came into use subsequent to the grant of the original patent, leaves no room for doubt that the reissued patent was taken out for the sole purpose of subjecting to the claims of that patent such pumps as employ an air chamber located above the cylinder, provided the chamber was connected to the pump stock by a tubular air pipe. It is fair to presume, therefore, that the reissued patent was applied for and obtained because the patentee himself believed that the claims of his original patent, when fairly construed in connection with other parts of the specification, could not be made to embrace the new form of pump, with a chamber located above the cylinder, which had recently come into use, and that it was necessary to alter certain parts of the original specification, and to recast the original claims, to bring the new pump within the terms of his patent. If this was not the opinion of the patentee, or of those who acted as his advisers, when the reissued patent was taken out, then we fail to see what was the purpose which induced the application for the reissue. It is a self-evident proposition that the invention related to a simple structure, that it was clearly described in the original patent, and that the patent, as issued, was neither inoperative nor invalid by reason of any defect or insufficiency of the specification, but undoubtedly secured to the patentee the exclusive right to manufacture the kind of pump which he had described in his specification, and illustrated in his drawings. In short, if there was a substantial defect in the original specification, it consisted in the fact that it was not so drawn as to bring within its claims another kind of pump, that had come into use sub-

sequent to the date of the original patent, which the patent might have been made to cover, if the patentee had foreseen the later mode of construction. For these reasons, and especially in view of the conduct of the patentee in applying for a reissue when there was no occasion for such application, unless he intended to enlarge the scope of his patent, we concur in the conclusion reached by the trial court touching the construction of the claims of the original Bean patent, and we further concur in the view that the claims of that patent were expanded in the reissue. We are constrained to believe that the expansion of the claims of the original patent was the sole purpose of applying for a reissue.

It is not an insuperable objection to the validity of a reissued patent that the original claims have been enlarged in the reissue. Under some circumstances, it is doubtless true that a patent may be reissued in such a form as to extend its scope. But it has been held repeatedly that, to warrant such reissues, they must be applied for promptly, and that the application for the reissue must be accompanied with satisfactory proof that, solely through accident or mistake, the patentee did not originally obtain all that he was fairly entitled to. Thus, in the leading case of Miller v. Brass Co., 104 U. S. 350, 355, the supreme court said:

"Now, whilst, as before stated, we do not deny that a claim may be enlarged in a reissued patent, we are of opinion that this can only be done when an actual mistake has occurred,—not from a mere error of judgment, for that may be rectified on appeal, but a real, bona fide mistake, inadvertently committed, such as a court of chancery, in cases within its ordinary jurisdiction, would correct. Reissues for the enlargement of claims should be the exception, and not the rule. And when, if a claim is too narrow (that is, if it does not contain all that the patentee is entitled to), the defect is apparent on the face of the patent, and can be discovered as soon as that document is taken out of its envelope and opened, there can be no valid excuse for delay in asking to have it corrected. Every independent inventor, every mechanic, every citizen, is affected by such delay, and by the issue of a new patent with a broader and more, comprehensive claim. The granting of a reissue for such a purpose, after an unreasonable delay, is clearly an abuse of the power to grant reissues, and may justly be declared illegal and void. It will not do for the patentee to wait until other inventors have produced new forms of improvement, and then, with the new light thus acquired, under pretense of inadvertence and mistake, apply for such an enlargement of his claim as to make it embrace these new forms. Such a process of expansion, carried on indefinitely, without regard to lapse of time, would operate most unjustly against the public, and is totally unauthorized by the law. In such a case, even he who has rights, and sleeps upon them, justly loses them. The correction of a patent by means of a reissue, where it is invalid or inoperative for want of a full and clear description of the invention, cannot be attended with such injurious results as follow from the enlargement of the claim. And hence a reissue may be proper in such cases, though a longer period has elapsed since the issue of the original patent. But, in reference to reissues made for the purpose of enlarging the scope of the patent, the rule of laches should be strictly applied; and no one should be relieved who has slept upon his rights, and has thus led the public to rely on the implied disclaimer involved in the terms of the original patent."

The same views have been reiterated in subsequent cases. Mahn v. Harwood, 112 U. S. 354, 5 Sup. Ct. 174, and 6 Sup. Ct. 451; Coon v. Wilson, 113 U. S. 268, 5 Sup. Ct. 537; Parker & Whipple Co. v. Yale Clock Co., 123 U. S. 87, 8 Sup. Ct. 38; Huber v. Manufacturing Co., 148 U. S. 270, 13 Sup. Ct. 603; Peoria Target Co. v. Cleveland Target

Co., 16 U. S. App. 78, 104, 105, 7 C. C. A. 197, 208, 209, and 58 Fed. 227, 238, 239.

Such being the well-established doctrine, we think it is clear that the first four claims of Bean's reissued patent, No. 8,631, should be held void for want of proper diligence in applying for a reissue, inasmuch as it appears that the reissued patent was not taken out for nearly three years after the date of the original patent, and inasmuch as it further appears that in the meantime a new pump had come into use, which was not covered by the claims of the original patent, but was covered by the first four claims of the reissued patent. This latter conclusion renders it unnecessary to decide whether there was any evidence before the commissioner of patents tending to show that the alleged defect in the original specification was due either to accident, inadvertence, or mistake, and no opinion is expressed on that point. It results from these views that the decree of the circuit court should be affirmed, and it is so ordered.