## In re KASER.

Patent Appeals No. 3122.

Court of Customs and Patent Appeals.

April 24, 1933.

Wm. R. Rummler and Rummler, Rummler & Woodworth, all of Chicago, Ill., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This appeal involves the right of appellant to have granted an application for the reissue of a patent, allowed by the United States Patent Office, the reissue application not having been filed until more than two years after the grant of the patent. It is submitted, largely, upon an agreed statement of facts.

The allowed patent bears date of March 6, 1928, being granted upon an application filed March 7, 1927. The application for reissue was filed June 26, 1930, or 2 years, 3 months, and 20 days after the grant. The original application was for "Improvements in Lockers" and embraced five claims. The reissue application sought to add a sixth claim expressed as follows: "6. A locker having two compartments with separate doors, a lock for one of said doors, a latch for the other door, and an interlock actuated by said one door and controlling the operation of the latch for the other door."

It is agreed in the statement of facts that the claim is broader than any claim in the original application, but that it "is not anticipated by any prior art reference found by the Examiner." The rejection by the Examiner, whose decision was affirmed by the Board of Appeals, whence the appeal to this court was taken, was based solely upon the ground that "the application for reissue was filed, *with a broadened claim,* more than two years following the issue of the patent." (Italics ours.)

In affirming the decision of the Examiner, the Board of Appeals cited numerous decisions of the Patent Office tribunals and of different courts, and concluded: "In view of the decisions cited we consider the action of the Examiner correct and it is therefore affirmed."

The statutory authority for the reissue of a patent is contained in section 4916, Rev.

St. (35 USCA § 64), the pertinent portion of which reads as follows: "Whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall, on the surrender of such patent and the payment of the duty required by law, cause a patent for the same invention, and in accordance with the corrected specification, to be reissued to the patentee or to his assigns or legal representatives, for the unexpired part of the term of the original patent."

It is to be noted that the statute itself fixes no limitation of time within which a reissue application may be filed, and the decisions below in this case are based primarily upon the authority of the cases cited. The board cites certain decisions of the Supreme Court of the United States, the first of which, as given in the brief of the Solicitor for the Patent Office, is Miller v. Brass Co., 104 U. S. 350, 355, 26 L. Ed. 783. Among other things, the court said: "Reissues for the enlargement of claims should be the exception and not the rule. And when, if a claim is too narrow,—that is, if it does not contain all that the patentee is entitled to,—the defect is apparent on the face of the patent, and can be discovered as soon as that document is taken out of its envelope and opened, there can be no valid excuse for delay in asking to have it corrected. Every independent inventor, every mechanic, every citizen, is affected by such delay, and by the issue of a new patent with a broader and more comprehensive claim. The granting of a reissue for such a purpose, after an unreasonable delay, is clearly an abuse of the power to grant reissues, and may justly be declared illegal and void."

A second case is that of Mahn v. Harwood et al., 112 U. S. 354, 357, 5 S. Ct. 174, 176, 6 S. Ct. 451, 28 L. Ed. 665, where the Supreme Court said: "The case seems to come clearly within the principles laid down in Miller v. Brass Co., 104 U. S. 350 [26 L. Ed. 783], and if we were right in the conclusions arrived at in that case, we do not see how we can sustain the patent sued on in this. The counsel for the appellant seems to be aware of this, and, in his argument directs his efforts mainly to attack the principles there expressed, although they have been frequently reiterated in subsequent cases. We deem it proper, therefore, to say, once for all, that the views announced in Miller v. Brass Co., on the subject of reissuing patents for the purpose of expanding and enlarging the claim, were deliberately expressed and are still adhered to. As the reasons for those views were quite fully gone into at that time, it is unnecessary to repeat them at large."

Also there are references to the cases of Wollensak v. Reiher, 115 U. S. 96, 5 S. Ct. 1137, 29 L. Ed. 350; White v. Dunbar, 119 U. S. 47, 7 S. Ct. 72, 30 L. Ed. 303; Newton v. Furst & Bradley Co., 119 U. S. 473, 7 S. Ct. 369, 30 L. Ed. 442; and Eby v. King, 158 U. S. 366, 15 S. Ct. 972, 39 L. Ed. 1018.

Certain cases decided by inferior courts of the United States are also cited by the Solicitor for the Patent Office, including Mast, Foos & Co. v. Iowa Windmill & Pump Co. (C. C. A.) 76 F. 816, and American Automotoneer Co. v. Porter (C. C. A.) 232 F. 456.

All the foregoing cases grew out of alleged infringements, and it is the gist of appellant's argument that the decisions were based upon the intervening rights which those charged with infringement had acquired. We state the contention in the language of the brief for appellant:

"In each of the long line of cases in which the Supreme Court has refused to *enforce* a reissued patent *as against the defendant,* the latter had acquired equitable intervening rights in the interim between the date of the original patent and the date of application for reissue; the existence of such equitable intervening rights was made an issue by the pleadings; said issue was tried and decided in favor of defendant.

"In the Kaser Case, now at bar, no such issue is present.

"The Supreme Court has never decided that the Commissioner of Patents was warranted in refusing to *grant* a reissue merely because of delay, or of the possibility that *someone* might afterwards be injured through unjust *enforcement* of the reissued patent. That question of *enforcement* rests with the courts after it has been duly placed in issue. We contend that the Commissioner has no right to preclude the presentation of such issue, by refusing to the applicant the prima facie evidence of his inventorship guaranteed to him by the patent statutes in consideration of his disclosure of his invention."

A further argument of appellant is based upon the ancient case of Grant v. Raymond, 31 U. S. (6 Pet.) 218, 243, 8 L. Ed. 376, decided by the Supreme Court of the United States in January, 1832, prior to the passage of the reissue statute, in 1870, the opinion

being by Chief Justice Marshall. The court there upheld the validity of the reissue of a patent by Henry Clay, secretary of state, stating that "the defect in the specification arose from inadvertence or mistake, and without any fraud or misconduct on the part of the patentee." Appellant argues that under the doctrine of this case a patentee is entitled to a reissue, the proper showing being made, "even if no reissue statute had ever been enacted."

It is argued that the "statute of reissues is a beneficent statute aimed toward certainty" and that it is in the interest of the public, the courts, and litigants.

In a reply brief, filed by permission of the court, appellant reargues some of the points advanced in his original brief; insists that the Constitution of the United States and the statutes "emphasize an intention to favor the inventor"; that the "Patent Office is supposed, by the public, to apply the statute according to the will of the people as expressed therein": that the Patent Office should follow the terms of the statute and not the terms of "any mere excerpt from a judicial opinion—(not, decision or decree)—written in explanation of some other case"; comments upon the failure of Congress, after the decision in Mahn v. Harwood, supra, to fix a time limit in the reissue statute and the effect of inserting the words "wholly or partly" therein, and presents variations of these several arguments.

Careful consideration has been given to appellant's interesting and rather fundamental contentions, and we have sought to ascertain the true interpretation of the decisions of the Supreme Court and other courts, with the view of determining whether they should be controlling in an ex parte proceeding such as that at bar.

Appeals from the Patent Office, such as this, are held not to be within the jurisdiction of the Supreme Court of the United States. Postum Cereal Co. v. California Fig Nut Co., 272 U. S. 693, 47 S. Ct. 284, 71 L. Ed. 478, and cases therein cited.

Consequently, the precise issue here presented has not been passed upon by that tribunal, except as the ratio decidendi of the decisions in the infringement cases alluded to is in point.

A careful reading of the full text of those opinions convinces us that the Supreme Court and the other courts in the cases respectively presented, rested their decisions upon at least two grounds, either of which grounds was determinative of the issues involved.

The first ground was that of the intervening rights acquired by the alleged infringers in the cases, and the second was that of the general rights of the *public.*

For example in the Miller v. Brass Co. Case, 104 U. S. 350, 356, 26 L. Ed. 783, it is said: " * * * In reference to reissues made *for the purpose of enlarging the scope of the patent,* the rule of laches should be strictly applied; and no one should be relieved who has slept upon his rights, and has thus led the *public* to rely on the implied disclaimer involved in the terms of the original patent." (Italics ours.)

It is noted that the opinion of the Supreme Court in the foregoing case, expressly distinguishes cases in which reissue is sought for the purpose of broadening claims, from cases in which reissue is sought because of the invalidity or inoperativeness of the original grant "for want of a full and clear description of the invention," and indicates that a reissue in the latter class of cases "may be proper * * * though a longer [than two year] period has elapsed since the issue of the original patent."

It does not appear from Chief Justice Marshall's opinion in Grant v. Raymond, supra, that any "broadening of the claims" over the original patent was present in the reissued patent. That question is nowhere alluded to in the opinion, nor is the synopsis of the arguments of counsel, one of whom (for defendant in Supreme Court), it is interesting to note, was Daniel Webster.

It is also worthy of note that the reissue statute, supra, does not expressly provide for a reissue in cases where the applicant, in his original grant, claimed *less* than he had a right to claim as new. Upon the phase of breadth of claims, the statute refers specifically only to cases in which an applicant originally claimed *more* than he had a right to claim as new, and it is suggested by the Solicitor for the Patent Office that "strict interpretation of the statute would not permit an enlarged claim at *any* time." (Italics ours.) It is not, as we understand it, the practice in the Patent Office to give such strict interpretation in cases where the terms of the statute are met, but enlarged claims presented after two years are not allowed.

The reply brief for appellant refers to the opinion in the case of Mahn v. Harwood, supra, as "much overworked." However often it may have been cited, we observe that the decision in the case has not been overruled by the Supreme Court, nor has there been any retraction by that tribunal of any

of the reasoning of the opinion so far as we are advised. One of the reasons given in the opinion for the judgment there rendered is stated at pages 359, 360 of 112 U. S., 5 S. Ct. 174, 177, 6 S. Ct. 451, 28 L. Ed. 665, in the following language: "Now, in our judgment, a patent for an invention cannot lawfully be reissued for the mere purpose of enlarging the claim, unless there has been a clear mistake inadvertently committed in the wording of the claim, and the application for a reissue is made within a reasonably short period after the original patent was granted. The granting of such reissues after the lapse of long periods of time is an abuse of the power, and is founded on a total misconception of the law. The commissioner of patents has evidently proceeded, in these cases, on the view that a patent may be reissued after any lapse of time, for the purpose of making a broader claim, by merely showing that the claim might have been broader than it was, and that it was inadvertently made too narrow at the time. In this we think he has been entirely in error. Lapse of time may be of small consequence on an application for the reissue of a patent on account of a defective specification or description, or where the original claim is too broad. But there are substantial reasons, not applicable to these cases, why a claim cannot be enlarged and made broader after an undue lapse of time. The rights of the public here intervene, which are totally inconsistent with such tardy reissues; and the great opportunity and temptation to commit fraud after any considerable lapse of time, when the circumstances of the original application have passed out of mind, and the monopoly has proved to be of great value, make it imperative on the courts, as a dictate of justice and public policy, to hold the patentees strictly to the rule of reasonable diligence in making applications for this kind of reissues."

We do not view the foregoing expression as being obiter dictum, but as being one of the vital reasons upon which the judgment rendered in the case was grounded, and, to our minds, a most anomalous and perplexing condition in the patent system would result should the Patent Office and this court, by adopting appellant's view as to their respective powers and duties under the statute, disregard the obvious and clearly stated implications which the quoted language conveys. Such a course would probably result in a continuous reissue of patents which, at the first opportunity, the Supreme Court would declare invalid, and we should have a state of confusion which sound public policy requires should be avoided.

We are unable to agree with the soundness of appellant's contention that an inference as to the correctness of his view of the duty of the Patent Office, under the statute, may be drawn from the failure of Congress (after the opinion in Mahn v. Harwood, supra), "to inject into the statute some provision of limit of time for filing application to broaden a patent." The decision in that case was rendered in 1884, and, were section 4916, Rev. St. (35 USCA § 64), supra, so ambiguous in its terms as to make proper a study of its legislative history in order to arrive at the legislative intent (a matter we do not here concede), it seems to us that, from the failure to amend it in the particular suggested by appellant (although amending it in other respects), after the decision and the practice which the Patent Office adopted thereunder, a conclusion as to the legislative will directly contrary to that offered by appellant must be deduced. Under the decision it was not necessary expressly to fix a two-year time limit by statute. The construction given the section by the court did that, in effect, unless special circumstances are shown to excuse further delay.

The two-year limitation upon reissue applications, filed for the purpose of broadening the claims, is based upon the doctrine that there has been an abandonment to the public of any matter disclosed, but not claimed in the original, and an analogy is found in section 4886, Rev. St. (35 USCA § 31), the basic section providing for and defining patentable inventions. This section requires, among other things, that the matter upon which one seeks patent shall not have been "in public use * *. * in this country for more than two years prior to his application, unless the same is proved to have been abandoned."

In the case of Miller v. Brass Co., supra, the Supreme Court of the United States said: "If two years' public enjoyment of an invention with the consent and allowance of the inventor is evidence of abandonment, and a bar to an application for a patent, a public disclaimer in the patent itself should be construed equally favorable to the public."

In other words, the failure to claim, in the original application, matter which might have been claimed under the disclosure is treated as an abandonment of such matter, apparently equivalent, in a sense, to a "public disclaimer" thereof, and same cannot be

subsequently obtained by a reissue, unless the reissue application be filed within the two-year period fixed by the basic section of the law as a condition of patentability.

It is to be borne in mind that the constitutional provision for the grant of patents, like most other provisions of the organic law, is not self-executing in its terms, but requires the interposition of the legislative power. It reads: "The Congress shall have Power * * * To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Const. art. 1, § 8, par. 8.

It is unnecessary here to discuss at length the reasons for the inclusion of this authority in the grant of powers to the federal government of which the Constitution is the framework. One result was to avoid questions which might have grown out of the common law relating to monopolies.

It was, and is, left to the discretion of Congress to determine the conditions and limitations upon which, for a limited time, monopoly as to discoveries and inventions may be granted.

Another reason which governs this court in arriving at its conclusion herein is found in a long line of decisions of the Court of Appeals of the District of Columbia, our immediate predecessor in this jurisdiction.

That court, in the ex parte case of In re Starkey, 21 App. D. C. 519, citing the Supreme Court decisions referred to, supra, and others, declared: "We must now regard the law as well settled by the Supreme Court of the United States, that, after the lapse of two years after the issue of a patent, a reissue which seeks to enlarge the claims of the original patent will not be granted or, if granted, will be held invalid, unless special circumstances are shown to excuse the delay. No such circumstances are shown in the present case."

The rule there declared was subsequently continuously and consistently applied by that court in cases such as Application of Schneider, 49 App. D. C. 204, 262 F. 718; In re Otto, 49 App. D. C. 89, 259 F. 985; In re Hoiland, 50 App. D. C. 268, 270 F. 704; In re Hernandez, 54 App. D. C. 404, 298 F. 1019; In re Mummert, 51 App. D. C. 258, 278 F. 399; In re Claude, 56 App. D. C. 281, 12 F.(2d) 816; In re Markel, 57 App. D. C. 97, 17 F.(2d) 685; In re Schroeder, 52 App. D. C. 67, 281 F. 427.

Appellant's analysis and discussion of those cases in his reply brief does not convince us that the doctrine there enunciated should be overruled, an action which, we think, would have to be taken to sustain appellant's appeal.

The decision of the Board of Appeals is affirmed.

Affirmed.